**In re COLONY SQUARE COMPANY, Debtor.**

**Bankruptcy No. 82–254.**

United States Bankruptcy Court,
W. D. Pennsylvania.

May 10, 1982.

George M. Cheever, Peter J. Kalis, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Committee of Limited Partnership.

Michael J. Yurcheshen, Pittsburgh, Pa., Jared I. Roberts, Philadelphia, Pa., for Prudential.

F. M. Bird, Jr., Atlanta, Ga., George L. Cass, Pittsburgh, Pa., for Colony Square.

William Rodgers, Jr., Pittsburgh, Pa., for Creditors' Committee.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This matter comes before the Court on a Motion to Dismiss or For a Change in Venue or For Abstention. The Motion to Dismiss the Debtor's Chapter 11 Petition is filed by the Prudential Insurance Company of America ("Prudential"). Prudential asserts the following grounds for its Motion to Dismiss: lack of jurisdiction, want of good faith, violation of the doctrine of laches, and abstention. The Debtor, Colony Square Company ("CSC") answered the Motion to Dismiss. The parties have agreed to the facts and submit this issue to the Court on Briefs.

## FINDINGS OF FACT

Colony filed a Petition for Relief under Chapter XII of the former Bankruptcy Act on October 16, 1975. This petition was filed in the United States Bankruptcy Court for

the Northern District of Georgia. A Consolidated Plan of Arrangement ("Plan") was confirmed in that case by an Order signed by Judge Robinson on March 30, 1977. The Plan was proposed by Prudential, the largest secured creditor of Colony.

Paragraph (f) of the Confirmation Order reads, in pertinent part, as follows:

> This Court shall retain jurisdiction to enforce this Order and the Plan .... This Court shall, as provided in the Plan, retain exclusive jurisdiction of the debtor's property leased to Prudential for the purpose of enforcing the provisions of the Plan with respect thereto.

The Plan provided, *inter alia*, with respect to Prudential that:

> When the Plan was confirmed on March 30, 1977 by the Atlanta Court, CSC's and Prudential's relationship of borrower and lender were reaffirmed, and Prudential went into possession of the collateral under a five-year lease subject to two one-year renewals. Prudential could not foreclose or exercise other remedies as a lender during the initial term if CSC did not default on its sole obligation, which was to make annual contributions to offset certain operating costs. Beginning in 1978, CSC could regain possession by paying Prudential off or by bringing Prudential current, and making certain other payments, during the last 90 days (excepting New Year's Eve) of each year, including 1981. Prudential's Memorandum in Support at page 2.

CSC failed to make payments to Prudential by year end 1981, either to pay off the indebtedness or bring Prudential current. Neither had CSC in 1981 made the annual contribution to operating costs. Paragraph 111(B)(4) of the Plan provides:

> CSC shall have the right to bring its indebtedness to Prudential current or pay the same in full as set forth therein, failing which CSC shall comply with its obligations to convey to Prudential all of its right, title and interest in and to the remaining property in return for the cancellation of CSC's indebtedness to Prudential.

The amount owing to Prudential at the end of 1981 was approximately 90 million dollars.

On January 26, 1982 CSC filed its Petition for Relief under Chapter 11 of the Bankruptcy Code in the Western District of Pennsylvania. This filing action automatically caused a stay of any attempt by Prudential to enforce its rights without permission of the Court. The Motion to Dismiss questions CSC's right to file a Chapter 11 Petition in this Court or elsewhere.

## DISCUSSION

Prudential raises several arguments in support of its Motion to Dismiss and these will be discussed seriatim.

### 1. *Lack of Jurisdiction*

a) *Whether under the Bankruptcy Act and the Bankruptcy Code CSC's Chapter 11 Petition should be dismissed for lack of jurisdiction.*

Prudential argues that the Atlanta Court where a Bankruptcy case was commenced under the Act in 1975 retained exclusive jurisdiction over the property of the Debtor. The question now raised by this Motion to Dismiss is when does the exclusive jurisdiction of the Atlanta Court terminate.

Section 14(c)(5) of the Bankruptcy Act states:

> (c) The court shall grant the discharge unless satisfied that the bankrupt has
> . . .
>
> (5) in a proceeding under this Act commenced *within six years prior* to the date of filing of the petition in bankruptcy had been granted a discharge, or had a composition or an arrangement by way of composition or a wage earner's plan by way of composition confirmed under this Act.

The critical date is the date of the commencement of the case and not the date of confirmation of the Plan. The six years is measured from October 15, 1976 and not from March 22, 1977.

■ Under the scheme of the Act, a discharge of debts was granted, if among oth-

er things a debtor had not filed a petition for relief within the preceding six years. The Debtor here argues because six years have passed, it has the right to file a new petition. We have been unable to find language in the Bankruptcy Act that would forbid such a refiling.

Prudential argues that the new Code at § 403(a) of the Act forbids a new filing in this instance. This section is a part of the transitional legislation which passed along with the new Bankruptcy Code and states:

A case commenced under the Bankruptcy Act, and all other matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act [the Bankruptcy Reform Act] had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the Act had not been enacted.

This Court agrees with the Debtor that on these facts this section is not applicable here. The section is applicable to a situation where a case was filed prior to the passage of the Bankruptcy Reform Act and the Debtor seeks to convert his case from one under the Act to one under the Code. See *Central Trust Co. v. Official Creditors Comm. of Geiger Enterprises, Inc.,* —— U.S. ——, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). In *Geiger* the six years had not passed. CSC argues that it could have filed a new case under the Bankruptcy Act and that it is not prohibited by the Code from doing so. The *Geiger* rationale is not applicable.

This Court has been unable to find any case law on point. Our review of the statutes leads us to the conclusion that CSC is not forbidden by case law or statute from filing a Chapter 11 Petition in this Court after six years have passed.

b) *Does the Confirmation Order of the Atlanta Court forbid such a filing and mandate a dismissal of this Chapter 11 case?*

Section 476 of the Bankruptcy Act, which is applicable to a Chapter XII proceeding, states:

The confirmation of an arrangement shall discharge a debtor from his debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, excluding such debts as are not dischargeable under Section 17 of this Act.

The Atlanta Court retained jurisdiction in its Confirmation Order to "enforce" the Plan. Prior to the filing here, CSC could not question the right of the Atlanta Court to enforce the Plan if a request was made upon it to do so. However, in this case, what is at issue now is not enforcement of the Plan but the fact of a new filing.

In this regard several additional factors are persuasive. First, the retention of jurisdiction is bound in the Confirmation Order and not in the Plan itself. The parties did not vote for a provision providing for the Atlanta Court's jurisdiction. This raises the question of how long should "wet nursing" be permitted.

Secondly, there are two other places in the Court's Order which seem to permit the Debtor to manage its own affairs without further supervision of the Atlanta Court. The first of these is found at paragraph (3) of the Plan. This section reads in pertinent part as follows:

Except as provided in this Order and Decree, all creditors and other parties to these proceedings whose claims are discharged or to be discharged hereby and all other parties having a claim against the Debtor's property on the date hereof, ... are hereby permanently enjoined from bringing any or maintaining any suit or action against the Debtor ...; provided, however, that this injunction shall not prevent any creditor or other party from seeking to enforce the provisions of the Plan or this order in this Court at any time when this Court has jurisdiction thereof, or if not within this Court's jurisdiction, or with this Court's leave, in any other forum; ....

This paragraph in the next to last phrase does not say "*and* with this Court's leave;"

it says, "*or* with this Court's leave." We conclude that the Atlanta Court contemplated a time when it would not have jurisdiction of the Debtor or its property. Unfortunately, we are not told when that could be. The Debtor urges the interpretation that the Atlanta Court lost exclusive jurisdiction when six years have passed.

Similarly paragraph (k) of the Atlanta Court's Order states:

> Within ninety (90) days following the date on which the provisions of the Plan have been fully implemented, the Debtor shall file with the Court as its final report, a schedule of payments of creditors under the Plan based on information provided by LTIC and Prudential, and is hereby relieved of the necessity of filing any further operating statements. Upon the filing of such final report, Colony Square Company shall be discharged as a Debtor in Possession in these proceedings.

The paragraph refers to implementation of the Plan, not completion. This paragraph implements Section 476 of the Bankruptcy Act. There is no language in that section or in this paragraph giving the Court general power to retain jurisdiction. Since the Debtor is discharged, any retention of jurisdiction can only be for the purpose of enforcing the Plan, if the Atlanta Court is requested to enforce the Plan. In other words, the Atlanta Court can enforce the Plan, but after the six years it cannot be the exclusive forum for seeking enforcement of the Plan. This is the only sensible interpretation if paragraphs (e), (f) and (k) of the Order are read together.

This Court is of the opinion that a reorganization case under the Bankruptcy Act or a Chapter 11 case under the Bankruptcy Code cannot be under the filing Court's protection indefinitely. The Second Circuit of Appeals stated in 1943:

> Congress did not intend that the Bankruptcy Court should, after an approval of a plan ... have power to remain a wet nurse to the reorganized company. A bankruptcy court cannot obtain that power merely by inserting a provision reserving jurisdiction. *In re Flatbush Ave.-*

*Nevins St. Corporation*, 133 F.2d 760, 762 (1943).

In that case the Court was being asked to construe the terms of a voting trust that had been established as part of the plan of reorganization. The plan was approved on April 16, 1937 and the shares of stock deposited under the voting trust on July 30, 1937. A state statute provided that a voting trust like the one involved would automatically expire in five years unless 51% of the stock was voted for a continuance of the trust. The Trustees solicited nearly 50% of the stock for a continuance and declared the trust to be continued prior to the expiration date. The District Court had reserved in the plan:

> Full right and jurisdiction to make from time to time such other and further orders in the proceedings as it may deem proper. Quoted in *Ibid.* at page 761.

Relying on this grant of power, the District Court construed the voting trust agreement and found, *inter alia*, that the voting trust had not been legally extended but had expired by its own terms on July 30, 1942. The Second Circuit upheld the finding enunciated by the lower court, but said:

> The court below had no jurisdiction to enter its extensive order which declared and settled all the rights and obligations of the parties .... Here respondent originally challenged the jurisdiction but ultimately acquiesced in it and now joins with the trustees to urge us to act in the premises. Even though our action must be as restricted as it was in the London Terrace case, we think that similar action here, indicating how the plan as to the voting trust is to be finally effectuated, is possible. We have neither the plan nor the court's full order before us, but it seems reasonable to conclude that the voting trust was an important feature of the plan, which necessarily suggests that the means of finally renewing or getting rid of that voting trust is also important. Accordingly, we feel justified in saying here that we do not believe a fair meaning of the plan, read in the light of the state statute, permitted the trustees to

take the votes, insuring their own continuance in office, at any time they chose and then to close the books before the original period of the trust had terminated; we believe that the voting remained open until July 30, 1942, at which time the votes were not in favor of the continuance of the trust. Beyond this we cannot go.

The order below will be modified to provide for the statement we have just made, and that either party may bring further proceedings in a court of proper jurisdiction. *Ibid.* at 762–62.

The order gives effect to the trust terms because of the consents to jurisdiction but at the same time allows either party to pursue further remedies in non-bankruptcy courts.

Prudential cites the Court to four subsequent cases, three in the Second Circuit and one in the Third Circuit, where the Court said it was appropriate for the reorganization Court to retain some jurisdiction in particular circumstances. The Second Circuit cases are *In re Dilbert's Quality Supermarket, Inc.*, 368 F.2d 922 (2nd Cir. 1966); *North American Car Corporation v. Peerless Weighing and Vending Machine Corporation*, 143 F.2d 938 (2nd Cir. 1948); and *Brooklyn Trust Co. v. Kelby*, 134 F.2d 105 (2nd Cir. 1944), *cert. den.*, 319 U.S. 767, 63 S.Ct. 1330, 87 L.Ed. 1717 (1943). The Third Circuit case is *In re Pittsburgh Terminal Coal Corp.*, 183 F.2d 520 (3rd Cir. 1950), *cert. den.*, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950). The *Brooklyn Trust* case involved the turnover of assets by a Trustee to a new successor corporation. The Court found that the reorganization Court could appropriately retain jurisdiction to hear complaints regarding an accounting for the turnover. The *North American Car* case involved an application to exchange the stock in the debtor's successor corporation, after the time period set forth in the plan for the exchange had expired. The Circuit said that the reorganization Court did not have jurisdiction to involve itself in this controversy. In *Pittsburgh Terminal Coal* the Circuit recognized that it was appropriate for the reorganization Court to retain

jurisdiction over allegations of malfeasance by the officers of a successor corporation organized to liquidate the assets of the debtor. The facts of these cases are not close to this situation. Where the Courts did properly retain jurisdiction, there were questions of impropriety in the administration of the case. Most importantly, none of these cases involved the six year issue and a new filing.

The *Dilbert's Supermarket* case may be the most instructive for our purposes. In that case a plan had been confirmed on July 6, 1964 and on March 29, 1965 a mortgagee moved in State Court to evict the Debtor from its premises. The mortgagee who had recently been assigned the mortgage apparently was unaware of the bankruptcy, and after its initial action had been answered it moved for leave to continue its action in the Bankruptcy Court. The lease had been specifically affirmed on July 26, 1964 and the Debtor was current in its payments since that time. The reorganization Court enjoined the foreclosure action and the mortgagee appealed saying, *inter alia*, that the reorganization Court lacked jurisdiction. The Circuit Court stated:

Under the circumstances of this case we hold that the court did not pass on the validity of the lease and the mortgage claim. When reorganization has been completed and the new corporation is fully functioning as an economic unit, a court should not keep it indefinitely under the judicial wing. (Citations omitted.) Here, however, the claimed default was on July 14, 1964 two weeks prior to affirmation of the lease. Jurisdiction was properly retained by the court to protect its decree, to prevent interference with the execution of the plan and to aid otherwise in its operation. Much remained to be done before final decree could be entered—determination of intercompany claims, participation of classes of creditors, confirmation of other leases. The lease in question was essential to the functioning of the corporation in reorganization. Serious claims were made of irregularities in the purported creation

and transfer of mortgage liens, foreclosure of which might operate to frustrate a substantial portion of the plan of reorganization. *In re Dilbert's Quality Supermarket, Inc.*, 368 F.2d 922, 924 (1966). Colony Square Company fits the description of the new corporation which is fully functioning as an economic unit. None of the policy considerations or time considerations which concerned the *Dilbert's* Court are present in this case. And once again, importantly, the Second Circuit was not faced with a six year passage of time and a new filing.

In conclusion, we find based on a review of the Atlanta Court's Order, the statute, rules, and case law that this Court does have jurisdiction to hear this case.

2. *Whether CSC's Chapter 11 Petition should be dismissed for lack of good faith.*

■ This Court is not persuaded that the Debtor filed this petition in bad faith. Prudential has not met its burden in this regard.

3. *Whether CSC's Petition should be dismissed pursuant to the Doctrine of Laches.*

■ This Court is not convinced on the basis of any of the authorities presented by Prudential that the doctrine of laches is applicable to the case at hand. The facts in *In re Eagson*, 1 B.R. 777 (Bkrtcy.E.D.Pa. 1980) do not apply in this case. In fact, the Eagson Court stated that "there is no mandate that a petition under Chapter 11 be filed within a certain time." *Id.* at 779. Without such a showing the doctrine of laches cannot be applied.

4. *Whether this Court should abstain from entertaining these proceedings pursuant to the provisions of § 305(a)(1) of the Bankruptcy Code.*

■ This Court finds Section 305(a)(1) not applicable to the case at hand. A Court under Section 305(a)(1) may dismiss or suspend a case if:

(i) the interests of creditors and the debtor would be better served by such dismissal or suspension.

This Court believes that the record in this case does not support a finding that the interests of the Debtor and the creditor would be better served by such suspension or dismissal. The legislative history suggests when such a dismissal may be appropriate.

The court may dismiss or suspend under the first paragraph, for example, if an arrangement is being worked out by the creditors and the debtor out of court, there is no prejudice to the creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests in the case. House Report No. 95–595, 95th Cong., 1st Sess. (1977) 325; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 35, U.S. Code Cong. & Admin.News 1978, p. 5787.

No like interest of the creditors and CSC are involved here.

5. *Whether for purposes of CSC's Chapter 11 Petition Venue is improper in this Court.*

■ Prudential relies in this argument on Bankruptcy Rule 11–7. However, that rule applies to Chapter XI cases, and therefore it is inapplicable here. In fact, Prudential does not dispute that pursuant to 28 U.S.C. § 1472(1), venue for this case is proper in this Court.

6. *Whether this Court should abstain from hearing this case pursuant to 28 U.S.C. § 1471(d).*

■ Prudential's reliance on 28 U.S.C. § 1471(d) is misplaced. This section refers to abstaining from hearing a proceeding not a case. "Case" refers to the bankruptcy itself while a "proceeding" is a matter ancillary to the case. See this Court's decision in *In re Johanna A. Stamm, et al. v. Rapco Foam, Inc., et al.*, 21 B.R. 715, 719–720 Adversary No. 81–1531, February 26, 1982, pages 8–9, Kennedy, *The Bankruptcy*

*Court Under the New Bankruptcy Law: Its Structure, Jurisdiction, Venue and Procedure*, 11 St. Mary's L.J. 265 (1979); House Report No. 95–595, 95th Cong., 1st Sess. (1977) 445; Senate Report No. 95–989, 95th Cong., 2nd Sess. (1978) 153–4. Prudential's request for abstention in this instance will not be granted.

In conclusion, for the reasons stated above, Prudential's Motion to Dismiss, or for Abstention or for Change of Venue is Denied.

An appropriate Order will issue.

The Court notes that this case was filed on January 28, 1982, and that CSC has the exclusive right until May 28, 1982 in which to file a Plan and that CSC must provide adequate protection. The secured position of Prudential cannot be modified without providing the indubitable equivalent to Prudential.