## In re PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant,

v.

## COLONY SQUARE COMPANY, Debtor,

## Committee of Holders of Partnership Interests and Committee for Unsecured Creditors, Appellees.

### Civ. A. No. 82–1282.

United States District Court, W.D. Pennsylvania.

April 18, 1983.

F.M. Bird, Jr., Atlanta, Ga., Michael J. Yurcheshen, Pittsburgh, Pa., Henry T. Reath, Philadelphia, Pa., for appellant.

George L. Cass, Pittsburgh, Pa., for appellees.

George M. Cheever, William Rodgers, Jr., Pittsburgh, Pa., for debtor.

## MEMORANDUM OPINION

BLOCH, District Judge.

This is an appeal from the United States Bankruptcy Court for the Western District of Pennsylvania. On January 28, 1982, the debtor/appellee, Colony Square Company, filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Western District of Pennsylvania. Shortly thereafter, on February 24, 1983, appellant, the Prudential Insurance Company of America (hereinafter referred to as "Prudential"), filed a motion to dismiss the debtor's petition for lack of jurisdiction, for want of good faith, for violation of the doctrine of laches, and on the grounds of abstention, and in the alternative, for a change of venue. The Bankruptcy Court denied said motion, and Prudential has filed this appeal from the denial of its motion.

In passing on an appeal from the Bankruptcy Court, the district court must accept the Bankruptcy Judge's findings of fact, unless those findings are clearly erroneous. Rule of Bankruptcy Procedure 810; *In re Hollock*, 1 B.R. 212, 215 (D.M.D.Pa. 1979). After reviewing the record in this case, the Court finds that the Bankruptcy Judge's factfindings are not clearly erroneous. The facts, as established by the Bankruptcy Court in this case, follow.

"Colony filed a Petition for Relief under Chapter XII of the former Bankruptcy Act on October 16, 1975. This petition was filed in the United States Bankruptcy Court for the Northern District of Georgia. A Consolidated Plan of Arrangement ("Plan") was confirmed in that case by an Order signed by Judge Robinson on March 30, 1977. The Plan was proposed by Prudential, the largest secured creditor of Colony.

Paragraph (f) of the Confirmation Order reads, in pertinent part, as follows:

This Court shall retain jurisdiction to enforce this Order and the Plan.... This Court shall, as provided in the Plan, retain exclusive jurisdiction of the debtor's property leased to Prudential for the purpose of enforcing the provisions of the Plan with respect thereto.

The Plan provided, *inter alia,* with respect to Prudential that:

When the Plan was confirmed on March 30, 1977 by the Atlanta Court, CSC's and Prudential's relationship of borrower and lender were reaffirmed, the Prudential went into possession of the collateral under a five-year lease subject to two one-year renewals. Prudential could not foreclose or exercise other remedies as a lender during the initial term if CSC did not default on its sole obligation, which was to make annual contributions to offset certain operating costs. Beginning in 1978, CSC could regain possession by paying Prudential off or by bringing Prudential current, and making certain other payments, during the last 90 days (excepting New Year's Eve) of each year, including 1981. Prudential's Memorandum in Support at page 2.

CSC failed to make payments to Prudential by year end 1981, either to pay off the indebtedness or bring Prudential current. Neither had CSC in 1981 made the annual contribution to operating costs. Paragraph 111(B)(4) of the Plan provides:

CSC shall have the right to bring its indebtedness to Prudential current or pay the same in full as set forth therein, failing which CSC shall comply with its obligations to convey to Prudential all of its right, title and interest in and to the remaining property in return for the cancellation of CSC's indebtedness to Prudential.

The amount owing to Prudential at the end of 1981 was approximately 90 million dollars.

On January 26, 1982 CSC filed its Petition for Relief under Chapter 11 of the Bankruptcy Code in the Western District of Pennsylvania. This filing action automatically caused a stay of any attempt by Prudential to enforce its rights without permission of the Court. The Motion to Dismiss questions CSC's right to file a Chapter 11 Petition in this Court or elsewhere."[1]

*In re Colony Square Company,* 22 B.R. 92 pp. 93–94 (W.D.Pa.1982) (docket entry No. 22 of record on appeal). Although the district court must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous, the clearly erroneous standard does not apply to the Bankruptcy Court's conclusions of law; that is, the reviewing court must make an independent determination on the legal issues. *In re Holock,* 1 B.R. at 215. The Bankruptcy Court denied Prudential's motion for the following reasons: (1) the Bankruptcy Court did not lack jurisdiction to entertain the debtor's petition; (2) the petition was not filed in bad faith; (3) the doctrine of laches did not warrant dismissal of the petition; (4) abstention was not proper in this case; and (5) the Bankruptcy Court for the Western District of Pennsylvania was the proper venue for the action. After careful review of the record, this Court finds that the Bankruptcy Court's decision was contrary to law and should be reversed and remanded for further proceedings consistent with this Opinion.

The major thrust of the Bankruptcy Court's decision was contained in its discussion of Prudential's assertion of lack of jurisdiction.[2] First, the Bankruptcy Court cited § 14(c)(5) of the Bankruptcy Act of

---

1. Although the Court finds no error in, and adopts, these facts, it also sets forth several additional facts, at a later point in this Opinion, that are important to the rationale of this decision.

2. Eleven of the 14 pages of the Opinion were devoted to this argument. The other three pages served to summarily dispose of the other four arguments.

1898, 11 U.S.C. § 32(c)(5) (1976),[3] which states as follows:

(c) The Court shall grant the discharge unless satisfied that the bankrupt has ... (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy has been granted a discharge, or had a composition or an arrangement by way of composition or a wage earners plan by way of composition confirmed under this title; ....

The Bankruptcy Court found that six years elapsed between the filing of the first petition in the Bankruptcy Court for the Northern District of Georgia (filed on October 16, 1975) and the filing of the petition in the Bankruptcy Court for the Western District of Pennsylvania (filed on January 26, 1982). Accordingly, relying on § 14(c)(5), the Bankruptcy Court determined that there is nothing to prevent such a refiling.[4]

Second, the Bankruptcy Court held that the Georgia Bankruptcy Court's retention of exclusive jurisdiction over the debtor's property leased to Prudential for purposes of enforcement[5] does not preclude the filing of the January, 1982 petition filed in the Bankruptcy Court for the Western District of Pennsylvania. The Bankruptcy Court cited § 476 of the Bankruptcy Act of 1898, 11 U.S.C. § 876 (1976), which provides, in pertinent part, as follows:

The confirmation of an arrangement shall discharge a debtor from his debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, ....

After acknowledging § 476 and the presence of the retention of jurisdiction by the Georgia Bankruptcy Court, the Bankruptcy Court attempted to dispel § 476's applicability to this case by stating that "what is at issue now is not enforcement of the Plan but the fact of a new filing." *In re Colony Square Company,* 22 B.R. 92 p. 95 (W.D.Pa. 1982) (docket entry No. 22 of the record on appeal). Moreover, the Bankruptcy Court construed the provisions of the Order and Decree of Confirmation of Plan of Arrangement of the Georgia Bankruptcy Court, found that the 1975 case filed in the Georgia Bankruptcy Court could not be under that Court's protection indefinitely, and held that a Court should not attempt to "wet nurse"[6] a company during and after reorganization. *Id.* at 95–96.

This Court disagrees with the Bankruptcy Court's determinations. To set the stage for its rationale, the Court adds the following facts from the record to those already established by the Bankruptcy Court. Sometime prior to 1975, the debtor acquired land, in Atlanta, Georgia, for the purpose of constructing a complex, which contains office buildings, a hotel, apartments, and re-

---

3. The Bankruptcy Court relied upon the Bankruptcy Act of 1898 because the debtor's previous petition filed in the Georgia Bankruptcy Court was filed under Chapter XII of the Bankruptcy Act of 1898. In light of the fact that the petition filed in the Bankruptcy Court for the Western District of Pennsylvania was filed under the Bankruptcy Reform Act of 1978, the Court questions why the Bankruptcy Court did not rely upon 11 U.S.C. § 727(a)(8), which is the successor to § 14(c)(5), because the two provisions are virtually identical and because this determination is not critical in light of this Court's rationale set forth *infra,* the Court does not engage in a lengthy discussion of the propriety of the Bankruptcy Court's reliance on the provision of the Bankruptcy Act of 1898.

4. The Bankruptcy Court did not discuss or refer to the fact that both bankruptcies involved the same debt.

5. This retention of jurisdiction is set forth in subsection (f) of the Order and Decree of Confirmation of Plan of Arrangement of the Bankruptcy Court for the Northern District of Georgia, dated March 30, 1977. Exhibit "A" to Prudential's motion to dismiss for lack of jurisdiction or, in the alternative, for a change of venue (docket entry No. 9 of the record on appeal).

6. This term is taken from the Second Circuit opinion in *In re Flatbush Ave.-Nevins St. Corp.,* 133 F.2d 760 (2d Cir.1943). In that opinion, the Second Circuit stated that "Congress did not intend that the Bankruptcy Court should, after an approval of a plan ... have power to remain a *wet nurse* to the reorganized company." *Id.* at 762 (emphasis added).

tail shops and which is known as "Colony Square." Prudential loaned the debtor a substantial sum of money in connection with Colony Square, evidenced by a promissory note and a "Deed to Secure Debt and Security Agreement," under which Colony Square was conveyed to Prudential as collateral. The debtor was unable to meet its obligations as they came due and petitioned the Georgia Bankruptcy Court for an arrangement with its creditors under Chapter XII of the Bankruptcy Act of 1898.[7] The Georgia Bankruptcy Court signed an order, dated March 30, 1977, which served to reaffirm Prudential's and the debtor's relationship as lender and borrower. Under the arrangement, Prudential went into possession of the property under a 5-year lease and could not foreclose or exercise other remedies during the lease term, provided that the debtor did not default on its sole obligation of making annual contributions to offset operating costs. Moreover, commencing in 1978, the debtor could regain possession by paying Prudential the outstanding loan amount or, at least, bringing the loan current and by making certain other payments during the last 90 days of each year, 1978–1981. By the end of 1981, the debtor neither paid off the outstanding amount nor brought the loan current. Further, the debtor failed to make the annual contributions for operating expenses for 1981. Under the terms of the plan confirmed by the Georgia Bankruptcy Court in 1977, failure of the debtor to comply with its obligations is to result in the debtor's conveying of all of its right, title, and interest in Colony Square in return for cancellation of the indebtedness to Prudential. *In re Colony Square,* 22 B.R. 92 p. 94 (W.D.Pa. 1982) (docket entry No. 22 of the record on appeal); Exhibit "C" to Prudential's Motion to Dismiss, III(B)(4), pp. 9–10 (docket entry No. 9 of the record on appeal). Only 28 days [8] after it had defaulted on its obligation under the 1977 plan, January 28, 1982, and while the Georgia Bankruptcy Court retained jurisdiction to enforce the plan, the debtor filed a bankruptcy petition in the Bankruptcy Court for the Western District of Pennsylvania, listing the Prudential debt in its petition. Statement of Financial Affairs for Debtor Engaged in Business (docket entry No. 3 of the record on appeal).

■ With these facts in mind, the Court looks to the United States Supreme Court case of *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925). In *Freshman,* the Supreme Court held that the pendency of a voluntary petition in bankruptcy precludes consideration of a second voluntary petition in connection with the same debts. *Id.* at 122, 46 S.Ct. at 41. *See Prudential Loan and Finance Co. v. Robarts,* 52 F.2d 918, 919 (5th Cir.1931). Although the *Freshman* decision is rather old, it is still good law and has been relied upon in a recent bankruptcy case involving an analogous situation. *In re Stahl, Asano, Shigetomi Associates,* 6 B.R. 232 (D.Haw.1980).[9]

■ This Court believes that the record reveals that the Chapter XII bankruptcy action filed by the debtor in the Bankruptcy Court for the Northern District of Georgia in 1975 is still pending, particularly

7. The Court finds that these facts are agreed upon in that both parties set them forth in their briefs. Moreover, these facts can be ascertained from a careful reading of the Consolidated Plan of Arrangement Proposed by the Prudential Insurance Company of America and confirmed by the Georgia Bankruptcy Court. Exhibit "C" to Prudential's motion to dismiss or, in the alternative, for a change of venue (docket entry No. 9 of the record on appeal).

8. The debtor failed to fulfill its obligations as required by December 31, 1981, and filed the bankruptcy proceeding in the Bankruptcy Court for the Western District of Pennsylvania on January 28, 1982.

9. In the *Stahl* case, the debtors commenced a proceeding for voluntary bankruptcy under Chapter 11 of the Bankruptcy Reform Act of 1978. The Bankruptcy Court held that the proceeding for voluntary bankruptcy under Chapter 11 could not be maintained while an appeal from an earlier proceeding by the same parties under Chapter XII of the Bankruptcy Act of 1898 was still pending. The Bankruptcy Court, relying on the *Freshman* decision, held that the action could not be maintained while the earlier bankruptcy was still pending.

in connection with the Prudential debt. Specifically, the Court points to the Order and Decree of Confirmation of Plan of Arrangement signed by the Bankruptcy Judge on March 30, 1977, which states, in pertinent part, at subsection (f) of the Order as follows:

> This Court shall retain jurisdiction to enforce this Order and the Plan, .... This Court shall, as provided in the Plan, retain exclusive jurisdiction of the debtor's property leased to Prudential for the purpose of enforcing the provisions of the Plan with respect thereto.

Exhibit "A" to the motion to dismiss or, in the alternative, for a change of venue, pp. 7–8 (docket entry No. 9 of record on appeal). The Court is cognizant of the fact § 476 of the Bankruptcy Act of 1898 states that the confirmation of an arrangement discharges a debtor; however, that same section provides for an exception to discharge if the arrangement so provided. As set forth above in the March 30, 1977 Order, the Georgia Bankruptcy Court retained jurisdiction of the property to enforce the provisions of the plan. The Court rejects the Bankruptcy Court's wet-nursing argument because it must be kept in mind that a bankruptcy action, and any plan of arrangement that results therefrom, are intended to protect the creditors as well as the debtor. The Bankruptcy Court's first contention in connection with its wet-nursing argument was totally incorrect. That is, the Bankruptcy Court stated that the parties did not vote for a provision providing for the retention of jurisdiction, that there was no provision for the retention of jurisdiction in the plan proposed to the Court for confirmation, and that the Georgia Bankruptcy Court inserted the retention of jurisdiction provision on its own initiative. *In re Colony Square Company,* 22 B.R. 92 p. 95 (W.D. Pa.1982) (docket entry No. 22 of record on appeal). Based upon these assertions, the Bankruptcy Court questions the Georgia Bankruptcy Court's attempt to wet nurse the debtor. *Id.* The truth of the matter is

that the plan did propose the retention of jurisdiction at IV(B)(2).[10] Exhibit "C" to Prudential's motion to dismiss or, in the alternative, for change of venue, p. 15 (docket entry No. 9 of the record on appeal). Both parties had a substantial interest in the property, and, in light of the fact that the retention of jurisdiction provision was contained in the plan, as well as the order, it is apparent that each party desired the provision to protect its interest. In essence, the retention of jurisdiction was not an attempt by the Court to wet nurse any particular party. Moreover, Exhibit "B" to Prudential's motion is a certificate from the Clerk of the United States Bankruptcy Court for the Northern District of Georgia, certifying that no final decree has been issued in the 1975 case and that it is still open on that Court's records. Exhibit "B" to Prudential's motion to dismiss or, in the alternative, for a change of venue (docket entry No. 9 of the record on appeal). Thus, although the Bankruptcy Court for the Northern District of Georgia confirmed a plan of arrangement for the debtor in 1977, the aforementioned entries in the record give the appearance that the bankruptcy is still pending in that Court. The Supreme Court's decision in *Freshman* mandates that when a bankruptcy action is pending, a bankruptcy court cannot entertain or consider a second petition involving the same debts.

Rather than dismiss the action, this Court believes that the proper thing to do here is to transfer that part of this proceeding involving the debtor's debt to Prudential to the Bankruptcy Court for the Northern District of Georgia, where the 1975 bankruptcy is still pending. This transfer is ordered in accordance with 28 U.S.C. § 1475, which provides as follows:

> A bankruptcy court may transfer a case under Title 11 or a proceeding arising or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties.

---

**10.** That section stated, in pertinent part, as follows: "Following confirmation, the Court will ... (ii) retain exclusive jurisdiction over the Remaining Property to supervise and enforce the compliance by CSC and Prudential with their agreements with each other...."

In accordance with § 1475, this Court believes that the interests of justice will be served by permitting the Bankruptcy Court for the Northern District of Georgia to make a determination on Prudential's motion in light of the fact that the 1982 petition involves the same debt as the 1975 petition that was filed in that Court.[11] Accordingly, the Order of the Bankruptcy Court is reversed, and the case is remanded for proceedings consistent with this Opinion.[12]

An appropriate Order will be issued.

---

11. Aside from the fact that the same debt is involved, the Court also notes that the property which is the subject of the debt is located within the jurisdiction of the Bankruptcy Court for the Northern District of Georgia.

12. As a postscript, the Court adds one final criticism of the Bankruptcy Court's opinion. The Bankruptcy Court's rationale can be interpreted to mean that a debtor can file a bankruptcy petition every six years, regardless of the circumstances. The Court disagrees with this position in light of the Congressional intention to prevent the creation of class of debtors who repeatedly attempt to escape their obligations through a number of bankruptcies. *See*

*Perry v. Commerce Loan Co.,* 383 U.S. 392, 399, 86 S.Ct. 852, 856, 15 L.Ed.2d 827 (1966). The Court acknowledges that 11 U.S.C. § 727(a)(8) prohibits the filing of bankruptcy within a 6-year period and that once that 6-year period has expired, a debtor is again eligible for bankruptcy; however, the law presented by the *Freshman* case and other similar circumstances indicate that it is not a hard-and-fast rule that a debtor may refile for bankruptcy every six years. The Court believes that the Bankruptcy Court must consider such things as the pendency of another bankruptcy in permitting a refiling.