**In the Matter of R & M PORTER FARMS, INC., Debtor.**

**R & M PORTER FARMS, INC., Petitioner,**

v.

**GREEN HILLS PRODUCTION CREDIT ASSOCIATION, Shockley, Reid & Koger, Bruce Strauss, and Frank W. Koger, Respondents.**

**Bankruptcy No. 84–00261–SJ–11.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Feb. 9, 1984.

Marvin J. Porter, Kidder, Mo., pro se.

Bruce E. Strauss, Frank W. Koger, Shockley, Reid & Koger, Kansas City, Mo., for respondents.

ORDER DENYING PETITIONER'S "APPLICATION FOR ORDER HOLDING IN CONTEMPT RESPONDENTS FOR VIOLATION OF AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362"

DENNIS J. STEWART, Bankruptcy Judge.

A prior chapter 11 reorganization case was filed by an entity identified with the petitioner on September 8, 1983.[1] See *Matter of Marvin Jay Porter*, d/b/a R & M Porter Farms, Inc., in proceedings for reorganization under chapter 11 of the Bankruptcy Code No. 83–02360–SJ–11–W (Bkrtcy.W.D.Mo.). In that case, when the time for the debtor to file a proposed plan and disclosure statement had nearly run out, the Green Hills Production Credit Association moved to dismiss the proceedings on grounds that they represented a purely frivolous attempt to stave off foreclosure by Green Hills of the debtor's farm property and that reorganization was not likely, if possible. On November 10, 1983, this court entered its written order denying the motion, stating, *inter alia*, the following findings and observations:

"The admissible and probative evidence which was then adduced shows that the debtor filed his within petition for relief under chapter 11 of the Bankruptcy Code on September 8, 1983, less than 24 hours before the foreclosure sale which had been scheduled by the movant Green Hills Production Credit Association; that the debtor had long been in default on his obligation to the movant and in fact had not made any payments at all against that obligation since April 1983; that the current balance owed to the movant is in the vicinity of $501,000.00 and the value of the security is much less; that, in fact, the debtor has no equity in any of the property which is sought to be made the subject of these chapter 11 proceedings; that, furthermore, virtually all the debt which is sought to be discharged is secured debt and the magnitude of the unsecured debt is almost negligible; that the debtor has been in a grave and failing financial condition for at least a year and a half prior to the filing of the petition; that this condition is due to bad weather conditions and high and variable interest rates which are admittedly out of the debtor's 'economic control,' as he terms it; that the debtor has not prosecuted these chapter 11 proceedings since the filing of the petition the day before the scheduled

---

1. The debtor's principal officer and stockholder filed the former chapter 11 proceeding in his name, noting that he was "doing business as" R & M Porter Farms, Inc. The real property which is materially involved in both proceedings is the same.

foreclosure sale; that no monthly operating statements have been filed in compliance with the local rules of bankruptcy procedure; that the schedules have not been amended so as fully to reflect the financial affairs, and assets and liabilities of the debtor, although further amendments have been continually contemplated by the debtor from the outset of the filing of these proceedings; that the debtor similarly has not responded to the movant's now pending motion for relief from the automatic stay within the time limits imposed by the orders of the court and the governing procedural rules; that the debtor has long attempted to obtain the credit which would be necessary and has been unsuccessful in his attempts and the evidence does not currently offer any warrant to infer a likelihood of the future gaining of credit; that the debtor instead plans *pro se* to institute a Truth-In-Lending action against the Green Hills Production Credit Association; and that, accordingly, it is his intention to propose a plan of reorganization which will provide for his 'redeeming' the secured property at its present value and providing for a 'moratorium' on payments on the deficiency until the prospective Truth-In-Lending action can be determined.

"It is true that the filing of chapter 11 case for the sole bad faith purpose of frustrating the rights of a secured creditor may constitute grounds for abstention or dismissal of the chapter 11 case. See, e.g., *Buffington v. First Service Corporation*, 672 F.2d 687 (8th Cir.1982). See also *In re Missouri*, 22 B.R. 600 (Bkrtcy.E.D.Ark.1982). But merely filing a chapter 11 petition shortly before a scheduled foreclosure sale does not, without more, constitute bad faith in the absence of any showing of intention not to reorganize. The movant asserts that this latter element is demonstrated by the fact that the debtor possesses no equity interest in any of the property sought to be protected from secured creditors; that, in effect, therefore, there is 'nothing to rehabilitate.' But it seems to be a lawful and socially constructive purpose of title 11 proceedings to permit the debtor to develop a method of preserving his right to keep and use the property which is necessary to his laboring according to his chosen vocation. In the case at bar, it is not without the realm of possibility that the debtor may be able to propose such a plan of reorganization. Although, as recounted above, the evidence which has been presented to the court shows that he is currently in desperate financial straits and has been so for some time; that he may have nearly run out of the potential to find financing which would admittedly be necessary to propose a feasible plan of reorganization; and that he intended to frustrate the attempted foreclosure on his farm property, it also shows that he has some experience and ability as a farmer and that, at 30 years of age, he may also have a future in farming. Under such circumstances, the court would be overly hasty and presumptuous in not even permitting the debtor the minimum period granted by the governing statute in which to propose a confirmable plan of reorganization. Accordingly, the motion to dismiss will be denied on condition of the debtor's timely filing of a confirmable plan of reorganization."

The denial of the motion, accordingly, was conditioned on the debtor's timely filing of a plan of reorganization and disclosure statement.[2] Nevertheless, even though the debtor was granted successive extensions of time in which to file a proposed plan and disclosure statement,[3] none was filed, with

---

**2.** This made the proposed plan and disclosure statement, under the provisions of section 1322 of the Bankruptcy Code, due to be filed on January 7, 1984.

**3.** The order was to be effective 25 days from and after that date in the absence of any objection by creditors filed within the intervening period. Additionally, the Green Hills Production Credit Association had been granted relief from the automatic stay as early as November 22, 1983. An untimely motion for reconsideration was filed on December 6, 1983, and denied on January 17, 1984.

the result that the court was compelled to enter its order on January 12, 1984, dismissing the prior chapter 11 proceedings.[4]

For the same reasons, essentially, this court issued its order on January 17, 1984, granting the Green Hills Production Credit Association relief from the automatic stay in respect to the debtor's farm property.[5]

Now, the files and records of this court show that, on January 27, 1984, R and M Porter Farms, Inc., has filed the chapter 11 petition now at bar by means of filing a bare petition without schedules or a statement of affairs. It was filed at 12:09 p.m., on that date, served on the respondent at 12:30 p.m., and, according to the allegations of the complaint, the foreclosure of the farm property by Green Hills Production Credit Association was consummated by the completion of the foreclosure sale at about 2:00 p.m., on the same date.

The application now before the court accordingly requests that the respondents "be punished for contempt of the court in knowingly and willfully violating 11 U.S.C. Section 362 according to the above stated facts."

 It is true that knowing violations of the automatic stay ordinarily can and should be the subjects of contempt orders. See *In re Brooks*, 12 B.R. 283 (Bkrtcy.W.D. Mo.1981). But "[a] debtor cannot arbitrarily and unreasonably stay a secured claimant. The purpose of Chapter 11, as in the entire history of reorganization in bankruptcy, is to relieve the distressed debtor where there is reasonable expectation of continued useful existence of the business ... The petition must not be filed *solely* for delay ... A case must be filed in good faith, else there is cause, independent of lack of adequate protection, to vacate the automatic stay." *In re BBT*, 11 B.R. 224, 235 (Bkrtcy.D.Nev.1981) (Emphasis in original). It is unlawful for a debtor to file successive chapter 11 cases for the sole purpose of frustrating a foreclosure.[6] The

files and records in these cases, including the material fact that the former case had to be dismissed for failure to file any plan or disclosure statement, despite successive extensions of time, adequately show that there has been no serious purpose to the current chapter 11 filing except to frustrate the foreclosure.

Further, separately and independently, this court should not exercise any contempt powers because there is current authority to the effect that bankruptcy courts have no contempt power. See *In re Cox Cotton Co.*, 24 B.R. 930, 956 (E.D.Ark.1983), to the following effect:

"The contempt power is an attribute of the judicial power of Article III and cannot be vested in a non-Article III court because the 'judicial power of the United States' cannot be vested in such a court. Those cases which referred to the inherent power of contempt in a bankruptcy court in fact referred to the power of the district court constituted as the bankruptcy court and as the repository of bankruptcy jurisdiction. The broad power to punish for contempt is 'inherently judicial' and therefore not delegable by Congress to a non-Article III court. Allowing the bankruptcy court to exercise this fundamental Article III power would undermine the very premises underlying that Article of our Constitution. Broad contempt powers are an exclusive Article III prerogative. Their exercise has a fundamental impact on the rights of citizens. They are often exercised in a summary fashion with minimal due process and procedural protections. Such power is constitutionally vested in Article III courts. It cannot be vested by legislative fiat in non-Article III courts."

This holding tends to be supported, both by the Supreme Court decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the relevant provi-

---

4. See note 3, *supra.*

5. See note 3, *supra.*

6. *Buffington v. First Service Corp.*, 672 F.2d 687, 690 (8th Cir.1982).

sions of the interim emergency rule for bankruptcy administration.[7] Accordingly, the bankruptcy court should exercise any discretion which it has in this contempt matter in favor of declining to issue any contempt citation. In accordance with the ruling in *In re Cox Cotton Co., supra*, the petition may conceivably seek relief in contempt from the district court.

Finally, even if it were currently within the power of the bankruptcy court to issue contempt orders of the type here sought and this case otherwise might be an appropriate case for the issuance of a contempt order, the court should stay its hand in this case. Exercise of the power of contempt "must be narrowly confined lest it become an instrument of tyranny." *Fisher v. Pace*, 336 U.S. 155, 163, 69 S.Ct. 425, 428, 93 L.Ed. 569 (1949) (dissenting opinion of Douglas, J.). It is a "delicate" exercise "and care is needed to avoid arbitrary and oppressive conclusions". *Cooke v. United States*, 267 U.S. 517, 539, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925). Under the circumstances of this case, the bankruptcy court should decline to exercise whatever contempt powers it possesses.

For the foregoing separate and independent reasons, it is hereby

ORDERED that petitioner's "application for order holding in contempt respondents for violation of automatic stay pursuant to 11 U.S.C. § 362" be, and it is hereby, denied.

---

**7.** The emergency rule prohibits the bankruptcy court's punishing criminal contempts and does not otherwise confer any contempt power upon the bankruptcy court.