**In re CROSS TIMBERS RANCH, INC., Debtor.**

**No. 93–20188–C–11.**

United States Bankruptcy Court, W.D. Missouri, C.D.

June 3, 1993.

Jerry W. Venters, Jefferson City, MO, for Agribank.

Lisa Henderson, Buffalo, MO, for debtor.

Robert Lantz, Office of U.S. Trustee.

### *MEMORANDUM OPINION*

FRANK W. KOGER, Chief Judge.

This matter came before the Court on a number of motions and countermotions and objections to motions. There was the motion to dismiss or convert the Chapter 11 filed by the largest creditor (Agribank) with objections filed by the debtor to Agribank's motion to dismiss or convert. There was also a motion to dismiss by the United States Trustee, plus a motion by debtor to employ counsel, as well as to waive procuring workers' compensation insurance. Finally, a motion by Agribank to approve a sale conducted under a previous Chapter 12, and a motion by Agribank for sanctions together with objections thereto by the debtor and a motion for contempt by the debtor against Agribank for conducting the sale. All of these motions were taken up at one time and the Court spent a number of hours in Court hearing these motions as a joint enterprise. Therefore, this opinion will address all of the issues raised by all of the motions and hopefully resolve same.

Before embarking into the rulings, it is necessary to at least summarize the background of this case. The debtor operates a ranch and farm in Hickory County, Missouri, occupying some 3,700 plus acres.

Some of the property is timbered. The balance is pasture. Some fescue hay is raised on the ground but apparently there is very little, if any, row crop ground.

Debtor's first encounter with the Bankruptcy Court occurred in Oklahoma where a Chapter 11 was filed in which the primary and only substantial asset was this acreage. The Chapter 11 plan was confirmed but unfortunately the debtor was unable to make the payments called for in the plan and although the plan specifically provided that Agribank could foreclose without further interruption by the debtor in the event of the failure of the Chapter 11 plan, once Agribank undertook to foreclose, debtor filed a Chapter 12 proceeding in this Court.

In the latter proceeding the debtor and the creditor Agribank sought to have this Court value the property so that that amount, whatever it was, could be used by the debtor as the secured claim of Agribank and the balance due on the debt could be used as the unsecured portion of Agribank's claim. The Court did this. In the meantime, Agribank filed a motion to dismiss the Chapter 12 alleging first that it was not filed in good faith and second that debtor was not eligible to file a Chapter 12 because it owed more than $1,500,000.00 at the time it filed its petition. Proceeding along parallel tracks, debtor did file a plan which the Court declined to confirm, while the Court also heard the evidence pertaining to the issue of eligibility of the debtor to file a Chapter 12.

Debtor then filed a second Chapter 12 plan which was scheduled for hearing on March 10, 1993. In the meantime, Agribank had obtained a lift of stay order from this Court allowing it to proceed with foreclosure and its foreclosure sale was set for March 12, 1993. On March 9, 1993, this Court issued its Memorandum Opinion holding that debtor was not eligible to file a Chapter 12 because the debts which it owed at the time of the filing exceeded $1,500,000.00, 151 B.R. 923. The Court further held that the fact that debtor had compromised one of those claims after the filing of the Chapter 12 petition did not bring debtor within the parameters of Chapter 12 because the point at which the measurement was to be made was on the date of filing the petition.

Debtor had appealed this Court's decision denying confirmation of the plan it originally proposed. Debtor had appealed this Court's decision allowing the lift of stay for Agribank. Debtor subsequently appealed this Court's ruling on the determination that debtor was not eligible for Chapter 12 relief. Therefore, on March 12, 1993, this Court's ruling which dismissed the Chapter 12 petition was three days old and there were two appeals already pending and another appeal in the process of being filed to appeal that ruling.

Against this background, debtor filed, at about 11:30 A.M., on the morning of March 12, 1993, a Chapter 11 petition. The assets were the same as they had been in the previous Chapter 11 and in the previous Chapter 12. The creditors were the same as had been the creditors in the Chapter 11 and Chapter 12 that preceded the instant filing. The only thing different was the counsel for the debtor. Agribank, being notified on March 12, 1993, of the new filing, some 30 minutes before the foreclosure sale in Hermitage, Missouri, was to occur, first adjourned the sale for an hour and then decided to cry the sale. The sale was cried, Agribank was the successful bidder (and apparently the only bidder) for all of the property with a bid of $575,000.00 which was approximately $53,000.00 more than this Court had found as the value of the real estate when first called upon to rule it in the Chapter 12. One final factor that enters into this matter and that is that on April 12, 1993, debtor dismissed all the appeals pending in the Chapter 12. Those appeals are no longer pending and the Chapter 12 and all its issues are final.

Thus, several questions arise: (1) should the Court confirm the Agribank foreclosure sale, or should the Court sanction Agribank for conducting the sale; (2) should the Court dismiss the Chapter 11 and should the Court sanction Cross Timbers Ranch, Inc. for an improper filing; (3) should the Court approve employment of

counsel and/or allow debtor to proceed without workers' compensation coverage? The Court has determined that it should approve the sale and should dismiss the Chapter 11. The Court believes the last two items are moot. There are a number of reasons for these rulings and the Court will attempt to explain them in some detail.

First, the Court is of the opinion that debtor had a Chapter 12 bankruptcy case pending when it filed the Chapter 11. True, this Court had entered an Order of Dismissal, but that Order was not final and would not be final until 10 days had passed and then only if no appeal was filed. Debtor did file an appeal which confirms what the Court believes, that is, there was no final order dismissing the Chapter 12 and the Chapter 12 was still pending when the Chapter 11 petition was filed.

Most of the courts which have considered the issue of whether a debtor is able to have two bankruptcy proceedings going forward at the same time, have concluded that a debtor may not. Such courts always cite *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) for that principle. However, there are substantial bankruptcy decisions along those same lines which are more modern or at least closer to this case in point of time. Those include *Prudential Insurance Co. of America v. Colony Square Company*, 29 B.R. 432 (W.D.Penn.1983). The appeal from that was dismissed by the Third Circuit Court at 725 F.2d 666 (1983). To like effect is *In re Bodine*, 113 B.R. 134 (Bkrtcy.W.D.N.Y.1990) and *In re Keen*, 121 B.R. 513 (Bkrtcy.W.D.Ky.1990). Those courts in holding that only one bankruptcy petition per debtor may be in effect at any one time cite a number of reasons for such rulings. Among them are the thought that the thrust of a bankruptcy proceeding is to obtain a discharge. That if the debts in the two bankruptcies are the same, there can be only the one discharge of those debts, and that a second case should not be allowed, rather the first case should proceed out to discharge without further complication. Likewise the Courts have cited the fact that judge shopping in multi judge districts may occur if the debtor is allowed to file multiple petitions all at the same time or in a serial time frame, and that the bankrupt can obviate a ruling it dislikes by a judge it does not find favorable by simply filing a new petition and hopefully getting another judge. In addition, the courts have stated that bankruptcy is not for the sole benefit of the debtors but is also designed to attempt to protect creditors and that exposing creditors to multiple filings, particularly filings that precede termination of a previous petition either by discharge, confirmation or dismissal is exposing said creditors to an improper abuse of legal process.

To these reasons which this Court believes are well expressed in the opinion cited, the undersigned would add one factor. The parties have had one petition filed and have had the legal and factual questions at issue and tried those questions twice in an appropriate setting of the Bankruptcy Court. They should not be allowed to relitigate those same additional issues in a subsequent proceeding. In other words, there should be some finality to the bankruptcy process just as there is to other judicial process. The debtors have already had two bites of the apple, once in Oklahoma in Chapter 11 and once in Missouri in Chapter 12 before they filed the third case.

Taking the position that the Chapter 11 was improperly filed while the Chapter 12 was still pending, it is clear that the stay which otherwise would have been created by the filing of the Chapter 11 was an improper stay and should be of no effect. Agribank took its chances in crying the sale. It appears to have made the right decision.

There is still another reason why the Chapter 11 petition is not effective to create a proper stay, a void sale, and contempt on the part of Agribank. That is the historical precedent for the action of Agribank. Same is found in *In the Matter of R & M Porter Farms, Inc.*, 38 B.R. 88 (Bkrtcy.W.D.Mo.1984). In that case, the Honorable Dennis J. Stewart of this district stated:

"It is true that knowing violations of the automatic stay ordinarily can and should be the subject of contempt orders. "See *In re Brooks*, 12 B.R. 283 (Bkrtcy. W.D.Mo.1981). But debtor cannot arbitrarily and unreasonably stay a secured claimant. The purpose of Chapter 11, as in the entire history of reorganization in bankruptcy, is to relieve the distressed debtor where there is reasonable expectation of continued useful existence of the business.... The petition must not be filed *solely* for delay ... A case must be filed in good faith, else there is cause, independent of lack of adequate protection, to vacate the automatic stay. *In re BBT*, 11 B.R. 224, (Bkrtcy.D.Nev.1981). It is unlawful for a debtor to file successive Chapter 11 cases for the sole purpose of frustrating a foreclosure. *Buffington v. First Service Corp.*, 672 F.2d 687 (8th Cir.1982).

Finally there is one more reason why the Chapter 11 would not have been effective even if it were not dismissed and another reason the Court believes that it should be dismissed. That is the fact that Agribank has not and will not agree to a plan that pays them only $522,000.00 for the property and pays pennies on the dollar for the unsecured portion of their claim. Since the debtor had no trade creditors, and only unsecured claims, it would seem that they would have to classify all of the unsecured portions of Agribank and the Land Bank and the Allison Trust and the Bank of Urbana together in one class. Although the balance due to Agribank might not dominate that class, it certainly would be of sufficient size so that debtor could not obtain the approval of that class of claims for the two-thirds in dollar amount required under § 1129(a).

Even if by some chance debtor could create another class (and we know that gerrymandering is no longer permitted, or so it would seem under the *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture, (In re Greystone III Joint Venture)* decision) 948 F.2d 134 (5th Cir.1991), then nevertheless the absolute priority rule would dominate if there was a cramdown under § 1129(b).

Under that rule (which is part of cramdown), debtor would have to pay the class of which Agribank was a member in full before debtor could retain any interest in the acreage which comprises Cross Timbers Ranch, Inc. It is, therefore, the view of this Court that; first, debtor could not create an impaired class which would vote for the plan since it had only four creditors, all of which would have an unsecured claim, with the only difference being that Agribank would also have a secured claim. Second, since there would be no favorably inclined impaired class to vote in favor of the plan, the plan could not be confirmed under either § 1129(a) or § 1129(b). Third, could a favorably inclined impaired class be created so that cramdown could occur under § 1129(b), debtor would still have to pay the class in which Agribank's claim was classified in full if they were to retain any interest in the real estate. Clearly the labor and "sweat equity" of the Allisons could not constitute the "new value exception" which apparently the 8th Circuit believes still exists after the adoption of the new Code as witness the 8th Circuit decision in *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388 (8th Cir. 1986), but which issue the Supreme Court declined to address.

Accordingly, based on all of the foregoing reasons, the Court affirms the sale of the real estate at foreclosure by Agribank. Primarily because it was expressly authorized by the lift of stay order in the Chapter 12 which was on appeal (without stay) at the time the foreclosure occurred, but also because the Chapter 11 was an improper filing. Furthermore, the Court declines to issue any contempt sanctions against Agribank for the reason they were authorized to conduct the sale under the pending Chapter 12, the Chapter 11 was improper and no stay arose from the filing of the Chapter 11.

The Motion to Dismiss the Chapter 11 brought both by Agribank and the United States Trustee is granted and the Chapter 11 is hereby dismissed without prejudice. The Motion by Cross Timbers Ranch, Inc. to employ counsel and requesting that no

Workman's Compensation Insurance be required are both moot and are denied because they are moot, also without prejudice.

 That brings the Court to the last item and that is Agribank's Request for Sanctions against the debtor and the debtor's counsel in the Chapter 11 proceeding. This is an extremely close question. However, the Court has concluded that it will not impose sanctions on either the debtor, the Allisons, who are the principals of the debtor, nor on counsel for the debtor in the Chapter 11 proceeding.

There are two divergent reasons. The first pertains to the debtor and the Allisons. They are and have been engaged in trying to save the "family farm". The act of farming or ranching or producing from a marriage of the soil and the sweat of the individual proprietor's body is something more than a usual business. Particularly this is true where the acreage involved has been in the family for a substantial length of time. It is very understandable why farmers and ranchers will go to the lengths they do to try to save their way of life. First, unless they were eternal optimists, looking only at the blue skies in the future, they would not be engaged in the calling in which they participate. Second, unless they had a love for the land they would not be engaged in the calling in which they participate. When these two factors are added together it is possible to see that such individuals do not feel their schemes and plans are impossible and not feasible. Instead they look only at the bright side of their calling which they have followed for so many years and proceed onward. The Court is extremely loath to penalize such conduct.

As to the counsel for the debtor in this proceeding, she was faced with an emergency situation. How much she knew about or was cognizant of the Oklahoma filing, the Chapter 12 filing, and the background of the past proceeding was not shown. It is the Court's belief that she was attempting to help people she thought were in trouble. She had an extremely limited time frame in which to check and

act. She did act, it didn't work out. The Court believes that her acts came from a generosity of heart rather than any impropriety. Under such circumstances the Court declines to issue sanctions.

For all the reasons stated herein, the ruling of the Court will be as outlined above. The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under Rule 7052, Rules of Bankruptcy.

SO ORDERED.