In re COLONY SQUARE COMPANY, a Georgia Limited Partnership.

No. C84–1109A.

United States District Court, N.D. Georgia, Atlanta Division.

June 27, 1985.

Frank M. Bird Jr., of Alston & Bird, Atlanta, for defendant Prudential Ins. Co. of America.

E. Penn Nicholson of Dodd, Driver, Connell & Hughes, Atlanta, Ga., Myles E. Eastwood, Asst. U.S. Atty., Robert E. Hicks and Charles E. Campbell of Hicks, Maloof & Campbell, Atlanta, Ga., for defendant Unsecured Creditors Committee.

Nickolas P. Chilivis of Chilivis & Grindler, Atlanta, Ga., Kenneth A. Shapiro of Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Thomas R. Johnson of Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for appellant/debtor Colony Square Co.

## ORDER

RICHARD C. FREEMAN, District Judge.

On March 26, 1984, Judge Hugh Robinson, Bankruptcy Judge of the United States Bankruptcy Court for the Northern District of Georgia dismissed a Chapter 11 petition which had been filed by Colony Square Company ("CSC") in 1982 in the bankruptcy court of Pennsylvania, 40 B.R. 603. CSC appeals the order of March 26, 1984. The issue on appeal is whether Judge Robinson erred in dismissing this Chapter 11 case for lack of subject matter jurisdiction.

## II. *Factual Background*

On October 16, 1975, CSC filed a voluntary petition under Chapter XII of the Bankruptcy Act of 1898 (formerly 11 U.S.C. § 801 *et seq.*) (the "Act"). In an order dated March 30, 1977, the bankruptcy court confirmed the Chapter XII Plan for CSC which had been proposed by the Prudential Insurance Company, the principal secured creditor of CSC, and consented to by CSC. The March 30 order discharged the indebtedness of CSC, except for its indebtedness to Prudential. CSC has continued its business under the Plan since the date of confirmation. The Plan included a Lease Agreement that provided that CSC would continue its ownership of the Colony Square Complex (the "Property"), with Prudential, as lessee, responsible for its management. Under the terms of the Lease, Prudential was to take possession of and operate the Property for a period initially ending December 31, 1981. Each year CSC's debt to Prudential would be reduced by "net cash flow" (defined in the Lease), and CSC would either bring the debt current or would refinance its debt with another lender. CSC also had the right to terminate the Lease prior to December 1981, by paying Prudential's entire debt or by bringing Prudential's debt current. In addition, CSC would be obligated to reimburse Prudential for its outlay, an amount in excess of $5 million, which was required to fund the Chapter XII Plan, as well as to pay for capital and leasehold improvements made to the Property during Prudential's term of possession and management. The Lease also required Prudential to provide CSC with audited financial statements for the property and other information.

Pursuant to the terms of the Moratorium Agreement which was entered into concurrently with the Lease, Prudential's right to enforce its claim on CSC's indebtedness was postponed for the duration of the Lease, provided that CSC made certain cash contributions to the operations of the Property on an annual basis. The Moratorium Agreement provided that prior to January 1, 1982, CSC had no obligation to make payments of principal on account of its indebtedness to Prudential, except to the extent of the rental payments received from Prudential under the Lease. The Moratorium Agreement also provided that the unpaid balance on CSC's indebtedness, with interest, was due on January 1, 1982, if CSC did not bring its indebtedness to Prudential current prior to that date. If CSC did not perform its obligations and exercise its right to terminate the Lease by paying Prudential in full or bringing Prudential current, and making the extra reimbursement payments, Prudential could then exercise its remedies. One of the remedies contained in the Moratorium Agreement gave Prudential the option to purchase the Property (in lieu of foreclosure) in exchange for cancellation of CSC's indebtedness to Prudential. If this option was chosen, Prudential was also granted the right to purchase the name "Colony Square."

The March 30 confirmation order also provided that the Atlanta bankruptcy court would retain exclusive jurisdiction over the rights and obligations of the parties with respect to the Chapter XII Plan:

This Court shall retain jurisdiction to enforce this order and the Plan ... this Court shall, as provided in the Plan, retain exclusive jurisdiction of the Debtor's property leased to Prudential for the purpose of enforcing the provisions of the Plan with respect thereto.

Order of March 30, 1977 at ¶ (f), pp. 7–8. The Chapter XII Plan also specifically provided that jurisdiction over the proceeding would be retained by the bankruptcy court:

Following confirmation, the Court will (i) retain jurisdiction to supervise the effectuation of this plan and to issue ancillary orders as may be necessary in connection therewith, and (ii) retain exclusive jurisdiction over the Remaining Property to supervise and enforce the compliance by CSC and Prudential with respect to any of the Remaining Property. Except for matters described in clause (ii) above, the Court will not exercise continuing jurisdiction over the Remaining Property after Final Confirmation.

Chapter XII Plan at ¶ (2), p. 15.

CSC failed to make its cash contribution during 1981, and also failed to pay Prudential in full or bring the debt current. Prudential accelerated its debt by notice to CSC dated December 14, 1981. This acceleration was subject to CSC's right to redeem. On January 8, 1982, Prudential gave CSC notice that it would exercise its option to acquire a deed in lieu of foreclosure and purchase the name "Colony Square." January 29, 1982 was set as the date for tender of the debt-cancellation documents.

On January 28, 1982, CSC filed a Chapter 11 case under Title 11, United States Code, as amended by the Bankruptcy Reform Act of 1978 (the "Code"), 11 U.S.C. § 101 *et seq.* This action was filed in the Bankruptcy Court for the Western District of Pennsylvania (the "Pittsburgh bankruptcy court"). The transfer of title to the Property from CSC to Prudential, scheduled for January 29, never took place.

Prudential moved to dismiss the Chapter 11 case in Pittsburgh. The Pittsburgh bankruptcy court denied the motion in May 1982, finding, *inter alia,* that it had jurisdiction over CSC's Chapter 11 petition, that the petition was timely filed in good faith, and that abstention was not proper under either 11 U.S.C. § 305 or 28 U.S.C. § 1471. *In re Colony Square Co.,* 22 B.R. 92 (Bankr.W.D.Pa.1982).

Prudential appealed this order of the Pittsburgh bankruptcy court. In April 1983, the United States District Court for the Western District of Pennsylvania reversed the Pittsburgh bankruptcy court and remanded the action with instructions to transfer the part of the proceeding in-

volving CSC's debt to Prudential to the bankruptcy court in Atlanta, pursuant to 28 U.S.C. § 1475, for the purpose of ruling on Prudential's motion to dismiss. Subsequently, the district court in Pittsburgh withdrew the reference of the case to the Pittsburgh bankruptcy court, and in November 1983, transferred the Chapter 11 case to this court. By an order entered February 2, 1984, this court referred the Chapter 11 case to the bankruptcy court in Atlanta. On March 26, 1984, the bankruptcy court, per Judge Robinson, dismissed the Chapter 11 case. This order is the subject of the instant appeal.

On April 2, 1985, this court affirmed the bankruptcy court's order of June 25, 1984, which enforced the plan of arrangement confirmed in the Chapter XII plan. This court found that section 403(a) of the Code and the retention of jurisdiction by the Atlanta bankruptcy court over the relationship between Prudential and CSC evolving from the confirmed plan in the Chapter XII case, required that section 362 of the Code have no force and effect as to Prudential, CSC, and the Atlanta bankruptcy court. *See In Re Colony Square,* Civil Action No. C84–1793A (N.D. Ga. April 2, 1985).

 After careful consideration of the bankruptcy court's decision below and the parties' briefs filed in this appeal, the court finds that the bankruptcy court correctly dismissed the Chapter 11 petition for lack of subject matter jurisdiction. In the order of April 2, this court rejected CSC's contention that the Chapter 11 petition triggered an automatic stay under section 362 which prevented the Atlanta bankruptcy court from enforcing the Chapter XII Plan. The court now finds that the Chapter 11 petition must be dismissed because CSC attempted to include within that petition debts and property which were already within the jurisdiction of the Chapter XII bankruptcy court. This finding is compelled by *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), and by section 403(a) of the Code.

In *Freshman v. Atkins,* the Supreme Court ruled that a bankruptcy court could refuse to accept an application for discharge from debt when an earlier application concerning the same debt was still pending in the court. Relying on *Freshman v. Atkins,* Judge Robinson held that the issue of the Prudential debt had been resolved during the on-going Chapter XII proceedings and that CSC was bound by the terms of the agreements which it had entered into in the course of those proceedings. Judge Robinson found that by filing the Chapter 11 petition, CSC was attempting to thwart the operation of the unconsummated Chapter XII Plan and to relitigate the question of how the Prudential debt should be handled in the bankruptcy proceedings. Because the Chapter XII bankruptcy court had retained jurisdiction to enforce the confirmed Chapter XII plan, Judge Robinson concluded the Chapter 11 proceeding had to be dismissed for lack of jurisdiction.

The dismissal of the Chapter 11 petition is also consistent with section 403(a) of the Code, which provides:

> A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the Act had not been enacted.

In the order of April 2, 1985, this court held that, pursuant to section 403(a), the filing of the Chapter 11 petition had no effect on the Chapter XII case or on the bankruptcy court's power to order enforcement of the confirmed Plan. The court now finds that the Chapter 11 case must be dismissed for lack of subject matter jurisdiction because the Chapter XII court has retained exclusive jurisdiction over the Prudential debt, the Colony Square property, the relationship of Prudential and CSC with regard to the debt and the property. Under the terms of section 403(a), the on-going Chapter XII proceeding continues as if the new

**52**

Act had never been enacted, and thus the filing of a Chapter 11 petition which attempts to assert jurisdiction over the same debt does not operate to divest the Chapter XII court of its exclusive and continuing jurisdiction over the debt.

■ The court also rejects CSC's argument that the Chapter 11 case can be maintained by virtue of section 14(c)(5) of the Act, 11 U.S.C. § 32(c)(5). This section provides, in relevant part, that:

> [T]he Court shall grant the discharge unless satisfied that the bankrupt ... (5) in a proceeding under this title commenced within six years prior to the date of the filing of the petition in bankruptcy has been granted a discharge or had a composition or an arrangement by way of a composition or a wage earners plan by way of composition confirmed under this title.

Judge Robinson found that in enacting this section, Congress did not contemplate providing a debtor with the unfettered right to refile a bankruptcy petition every six years if a bankruptcy case involving the same debt was still pending. This court agrees with Judge Robinson's interpretation of section 14(c)(5). The court does not believe that Congress intended that a debtor, such as CSC, with a pending, unconsummated plan would be allowed to file a new petition concerning the same debt in an attempt to avoid enforcement of the plan confirmed in the earlier proceeding.

Accordingly, the bankruptcy court's order of March 26, 1984 is AFFIRMED.