## In re DELAWARE VALLEY BROADCASTERS LIMITED PARTNERSHIP, Debtor.

### Bankruptcy No. 93–1304.

United States Bankruptcy Court, D. Delaware.

April 18, 1994.

Lawrence J. Tabas, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, PA, Neil B. Glassman, Bayard, Handelman & Murdoch, Wilmington, DE, for debtor.

Jeoffrey L. Burtch, Nancy N. Doughten, Wilmington, DE, for movants Roland E. Goode, et al.

John D. McLaughlin, Jr., Office of U.S. Trustee, Philadelphia, PA, for Office of U.S. trustee.

Stephen W. Spence, Phillips, Goldman & Spence, Wilmington, DE, for Elmer and Florence Lindale.

Gregory Hrebeniak, Justice Dept., Tax Div., Washington, DC, for U.S. and I.R.S.

### MEMORANDUM OPINION

JOSEPH L. COSETTI, Chief Judge.

Presently before the court is the Motion of the Class 4(b) Creditors to Dismiss Debtor's Chapter 11 Petition (Case No. 93–1304). After a review of the pleadings and briefs, the relevant case law and argument of counsel, it is the decision of this court that the motion to dismiss is granted.

### FACTS

Delaware Valley Broadcasters Limited Partnership (Debtor) is the owner/operator of a UHF television station, WTGI–TV. It filed a voluntary Chapter 11 petition in the District of Delaware on February 25, 1987 (Case No. 87–69, the "first" case). On May 1, 1989, Debtor's Third Amended Plan was confirmed by order of court. Incorporated

into the plan was an agreement between the debtor and the individual secured creditors who held Class 4(b) claims in the plan (now referred to as the "Class 4(b) Creditors"[1]), which established the amount and treatment of the indebtedness, payment terms, provisions in the event of sale, security for performance by the Debtor and default provisions.

After confirmation of the plan, the Debtor failed to make any payment to the Class 4(b) creditors or to any other creditor[2]. Since no distribution was made pursuant to the plan, substantial consummation did not occur. Accordingly, no final decree was ever entered pursuant to 11 U.S.C. § 350 and F.R.B.P. 3022.

Over the course of the last few years, various pleadings were filed of record and proceedings were brought by both the Debtor and the Class 4(b) Creditors in this and other courts relating to Debtor's assets and liabilities including efforts to sell Debtor's property and modify the plan postconfirmation. These efforts were unsuccessful. The Debtor continued to operate while the creditors remained unpaid.

On August 24, 1993 the Debtor filed a voluntary Chapter 11 petition in the Eastern District of Pennsylvania, (now bearing the case number 93–1304, the "second" case). The Class 4(b) Creditors filed a motion to dismiss the second case, or in the alternative, transfer venue to the bankruptcy court in the District of Delaware. On October 28, 1993, Judge Fox of the Eastern District of Pennsylvania transferred venue to Delaware but did not decide the issue of dismissal. Thus, the motion to dismiss remained for consideration before this court. In addition, the Class 4(b) Creditors filed a subsequent motion to dismiss the case after venue had been transferred.

Several matters were pending in the original case (Delaware Case No. 87–69) at the time the Debtor filed its case in the Eastern District of Pennsylvania. Among them was a Postconfirmation Modification to Debtor's Third Amended Plan of Reorganization filed by the Class 4(b) Creditors and a Motion for Approval of Sale of Assets of Debtor to Delaware Broadcasters, Inc. and Assumption and Assignment of Lease. The motion requested the approval of a sale of Debtor's assets to an entity called Delaware Broadcasters, Inc. ("DBI") for the purchase price of four (4) million dollars.[3]

After the second case was filed in the Eastern District of Pennsylvania, 1993, several pleadings were filed of record in the first case pending in Delaware. On August 27, 1993, three days after the second filing, the Debtor filed a Motion to Close Case requesting that the Chapter 11 proceeding pending in Delaware be "closed". In its motion, Debtor asserted that it would list in its schedules filed in the second case all of its creditors from the original bankruptcy in Delaware, in addition to new creditors. (Motion to Close Case, ¶ 7.) Thereafter, on October 11, 1993, a praecipe was filed by Laurence Berk, President of Delaware Broadcasters, Inc. withdrawing the pending Motion for Approval of Sale.

During the pendency of the second case in the Eastern District of Pennsylvania, Debtor filed a Plan of Liquidation on October 4, 1993 which provided for the sale and liquidation of its assets.[4] Attached to its plan was an Agreement of Sale to sell its assets to Delaware Broadcasters, Inc., the same entity who had previously filed a Motion for Approval of Sale in the original case in Delaware and subsequently withdrew its motion upon the filing of the case in Philadelphia.

---

1. The Class 4(b) creditors consist of Roland E. Goode, Thomas A. Maichak, Robert L. Smith, Noel L. Smith, Phyllis J. Smith and William E. Rollow. These creditors held prepetition secured interests in debtor's personal and real property in the amount of $3,725,000 according to debtor's original schedules.

2. It has been alleged, however, that the father-in-law of the general manager of the debtor, Elmer Lindale, has been paid approximately $100,000 since 1989. Mr. Lindale was granted a super-

priority lien for amounts loaned the debtor during the course of the Chapter 11.

3. The court notes that the motion for approval of sale was filed by the prospective purchaser, Delaware Broadcasters, Inc., not by the debtor seeking to sell its own assets.

4. Although a Plan of Liquidation was filed, no Disclosure Statement was filed therewith.

On January 24, 1994, Debtor filed a Motion for an Order Approving Bidding Procedures and Subsequent Sale of Certain Assets Free and Clear of Liens, Claims and Encumbrances Pursuant to Section 363 of the Bankruptcy Code pursuant to an Asset Purchase Agreement between the Debtor and Delaware Broadcasters, Inc. The purchase price for Debtor's assets was again four (4) million dollars. In addition, this agreement called for a topping fee of $150,000 to be paid to DBI in the event that the debtor received a "higher and better offer" which the bankruptcy court approved resulting in DBI not being the successful bidder.[5]

At oral argument on the motion to dismiss, the Debtor and the Class 4(b) Creditors were ordered to collaborate and arrive at consensual bidding procedures for the sale of Debtor's assets. Counsel was further ordered to submit briefs regarding the issue of dismissal of the second case. At that time, counsel expressed a willingness to attempt to achieve a resolution of the issue of which case should proceed. It appears that such a resolution was not attainable. Briefs have since been filed and the matter is ripe for decision.

## ISSUE

Can the Debtor proceed in a second voluntary Chapter 11 bankruptcy when it has not substantially consummated its plan of reorganization pursuant to a previously filed voluntary Chapter 11 case, particularly where creditors of the first case object, and circumstances have not changed?

## ANALYSIS

The Class 4(b) Creditors argue that the most recently filed petition (Case No. 93–1304) should be dismissed on a number of grounds including: (1) the proposition that simultaneous Chapter 11 cases cannot be maintained; (2) bad faith; (3) the filing was not the result of a bona fide change in circumstances; and (4) such dismissal would be in the best interest of the creditors.

The Debtor asserts that the cases are not pending simultaneously, but rather are successive serial filings and that there is no *per se* rule which prohibits serial filings. In addition, Debtor posits that the Court should refrain from exercising postconfirmation jurisdiction over the first case and adopt a "hands-off" approach. Debtor further contends that a sale conducted in the second case may generate a greater distribution to the administrative creditors of the first case whose claims will now be treated as unsecured claims.

### Serial Filings vs. Simultaneous Filings

The issue of whether these cases are simultaneously filed cases or successive serial cases requires initial examination. There is no dispute that the previously confirmed plan has not been consummated and no final decree has been entered. 11 U.S.C. § 350. The first case has, therefore, remained open and during the period of time since confirmation there have been various pleadings filed of record.

In support of their position that Debtor's first case is still active and that Debtor cannot, therefore, maintain a second Chapter 11 case movants cite *Prudential Ins. Co. of America v. Colony Square Co.*, 40 B.R. 603 (Bankr.N.D.Ga.1984), *aff'd* 62 B.R. 48 (N.D.Ga.1985) as well as other cases following *Freshman v. Atkins*, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (debtor cannot simultaneously maintain two bankruptcy cases), *e.g. In re Cross Timbers Ranch, Inc.*, 155 B.R. 215 (Bankr.W.D.Mo.1993), *In re Caperoads Plaza Ltd. Partnership*, 154 B.R. 614 (Bankr.D.Mass.1993).

In *Colony Square*, the Debtor filed a Chapter 11 case in the Western District of Pennsylvania approximately six years after filing a Chapter XII case in Georgia.[6] Debtor's case in Georgia, as here, had a confirmed plan which had not been consummated that allowed for the bankruptcy court's jurisdiction to enforce the plan. The final decree had not been entered and the case had not

---

5. The Asset Purchase Agreement stated that the debtor would be required to pay DBI a topping fee in the amount $150,000; however, the Motion for an Order Approving the Bidding Procedures and Subsequent Sale of Certain Assets and

proposed order submitted therewith provided that the topping fee would be $100,000.

6. The initial case was filed under the former Bankruptcy Act of 1898.

been closed at the time of the subsequent filing. The Bankruptcy Court in Georgia held that the second case filed in Pennsylvania should be dismissed. In doing so, it stated that the "clear weight of authority" holds that if a bankruptcy action is pending, a subsequently filed case which affects the same debts cannot be maintained. 40 B.R. at 605 *and cases cited therein.* The court further stated that Colony Square, the debtor, was seeking to relitigate the treatment of the Prudential debt and thwart the unconsummated plan by filing a subsequent plan; but that it was bound by its agreement and for the court to . allow such circumvention would make a "mockery" of its jurisdiction. *Id.* at 606.[7]

█ The facts at bar are similar to those in *Colony Square.* In its first case, Debtor had virtually a complete inability to consummate its plan. Debtor readily admits that almost immediately after confirmation of its plan, Debtor defaulted and has never been able to fund the plan. (Memorandum of Law in Opposition to the Motion of the 4(b) Creditors to Dismiss Debtor's Chapter 11 Petition, p. 4.) In addition, Debtor's confirmed plan contains a retention of jurisdiction provision which states, *inter alia,* that the court shall retain jurisdiction:

> [t]o determine any and all controversies, defaults, and disputes arising under or in the Plan;
> [t]o enforce the rights of holders of Claims or interests to payments to which they are entitled under the Plan and generally to effectuate performance of the provisions of the Plan.

Third Amended Plan of Reorganization, Section 13(c), (d).

As in *Colony Square,* this Debtor should not now be able to relitigate what has already been agreed upon by the parties and approved by the court, without a significant change in circumstances. Parties dealing with a Debtor during the course of the Chapter 11 do so with the understanding that if their debts are not paid in the ordinary course, they may be accorded administrative status. Those claimants whose debts fall within the ambit of administrative expense pursuant to 11 U.S.C. § 503 deserve to have their claims treated as such. If a debtor-in-possession is permitted to file subsequent cases without substantial consummation, each subsequent case will result in diminished treatment for the same debt. *See e.g., Jartran,* 886 F.2d 859, 870, 871 (7th Cir. 1989). Should Debtor's second case be permitted to proceed, those creditors having administrative claims in the first case would hold only unsecured claims in the second case for the very same debt. Such results would cast doubt upon dealing with any debtor-in-possession and potentially undermine the viability of the bankruptcy system. *But see Jartran, Id.* at 870.

In its first case, the Debtor negotiated an agreement with the Class 4(b) Creditors pursuant to the plan. Those creditors had an allowed secured claim of $3,725,000 for which they have received no payment. In the second case, Debtor proposes a distribution scheme which would give the Class 4(b) Creditors a secured claim in the amount of $662,406, in Debtor's best estimate, although Debtor would "offer" 1 million dollars to recognize the delay. (Memorandum of Law in Opposition to the Motion of the Class 4(b) Creditors to Dismiss Debtor's Petition, p. 20). The fact that paying the Class 4(b) Creditors less would allow more funds to be available for distribution to other administrative and unsecured creditors of the first case, has no unique merit. It is not the law of Robin Hood that we are to administer.

Debtor asserts that its first case is no longer "active" and, indeed, filed a Motion to Close the first case. Debtor argues that the cases are not simultaneous filings but, rather, are serial filings for which no *per se* prohibition exists. To support its position, debtor relies, in part, upon *In re Jartran, supra.* Debtor's reliance upon *Jartran* is inappropriate as *Jartran* involved a set of facts which are clearly distinguishable from those at bar. Although the instant case is similar to *Jartran* in that a liquidating plan is proposed in the second case rather than a plan of reorganization, it is notably distinguishable in that

---

7. The passage of six years did not appear to influence the court's decision.

Jartran's initial plan of reorganization had been substantially consummated.

The lower court in *Jartran* found that the second filing was not an attempt to modify the terms of the first plan, but was a "good faith admission" that the reorganized Debtor was not able to operate as a going concern. *Id.* at 868. Upon appeal, the court noted that it might have grounds for rejecting the lower court's finding of a permissible serial filing if it were faced with an appeal from a confirmed liquidation plan in which the Debtor had evaded its responsibilities under a previous reorganization plan. *Id.* at 868.

If this court were faced with a debtor which had substantially consummated its first reorganization plan, it would be examining an issue regarding a serial filing. However, where no consummation has taken place in the original case, no final decree has been entered, the case remains open on the docket, numerous pleadings pertaining to matters significant to the case have been filed postconfirmation, and Debtor's second filing comprises much of the same debt as the first, the first case is not in a posture to be considered concluded. Any subsequent filing is, therefore, not a "serial" filing.

Debtor's assertions that its plan in the first case is dead and the case cannot be revived are without merit. While the Debtor may desire the end of the first case, the obligations of the debtor to its creditors thereunder remain. Those obligations are as yet unfulfilled. The filing of a second case should not be permitted to alter or negate the existence, priority or amount of those obligations. Although, some courts have permitted simultaneous filings in certain instances. For example, the court in *In re Grimes,* 117 B.R. 531 (9th Cir. BAP 1990), relied upon by the debtor, permitted a Chapter 12 filing before debtor's confirmed Chapter 11 plan was substantially consummated. Such rationale has come under criticism as "an open invitation to open Pandora's box to an eternal debtor's haven". *In re Keen,* 121 B.R. 513 (Bankr.W.D.Ky.1990). The court in *Keen* expressed concern that decisions such as *Grimes* could serve as authority for endless filings resulting in the manipulation and abuse of the system by innovative debtors at the expense of the creditors. *Id.* at 515.

The court in *In re Fountain,* 142 B.R. 135 (Bankr.E.D.Va.1992), in ruling that debtor's second Chapter 13 petition was not filed in good faith where the first Chapter 13 petition was still active, even went so far as to state that it considered it an abuse of the system for a debtor to have more than one case pending at the same.

> To allow otherwise could or would orchestrate continuing injunctions against parties seeking relief under 11 U.S.C. § 362, confuse and possibly prejudice creditors, create repetitive litigation, as well as create consternation, as is reflected in this proceeding.

142 B.R. at 137.

The court in *Keen,* concluded that "[c]ourts have to draw the line based on good faith and common sense—we draw the line at one case at a time". 121 B.R. at 515. This court, too, shall draw the line at one case and grant the motion to dismiss.

### *Changed Circumstances/Bad Faith*

The Class 4(b) Creditors have also argued that the second filing should be dismissed because no new, negative unforeseen circumstances justified the filing. *See, e.g., Marbleton–Booper Assc.,* 127 B.R. 941 (Bankr. N.D.Ga.1991). Accordingly, they argue, for this and other reasons, the intertwined issue of bad faith should also require the dismissal of the second case.

Debtor asserts such changed circumstances consist of the following: the emergence of several potential buyers for Debtor's assets, legal developments including the enactment of the "must carry" rule, the pending foreclosure action initiated by the Class 4(b) Creditors and the alleged failure of the Class 4(b) creditors to perform under the plan, and the withdrawal of counsel for the Debtor in the first case.

■ This court finds Debtor's alleged changed circumstances to lack sufficient merit to warrant the filing of a second case. The proposed buyer in the second case is the very same entity that proposed to purchase the assets in the first case and, in fact, had a sale motion pending at the time of the filing of

the second petition which it withdrew. In addition, the sale price was the same four million in each case. Second, the enactment of the "must carry" rule was anticipated by the Debtor and incorporated into the reorganizational scheme in 1989. Although it may have taken longer to reenact after it was repealed in 1987 than Debtor had hoped, it cannot be said that the less than expeditious legislative process was unforeseen. Furthermore, the results of the reenactment of the "must carry" rule, i.e. that viewership increased and the assets are now more valuable, are not of a nature to warrant the second filing. Third, the foreclosure action was within the creditors' remedies upon default pursuant the agreement incorporated into the plan. Section 5.3 of the Agreement Between Delaware Valley Broadcasters Limited Partnership, Debtor–In–Possession, and the Individual Secured Creditors Holding Class 4(b) Claims. The circumstance of withdrawal of counsel is meritless in this context and does not warrant discussion.

Having determined that the Debtor cannot simultaneously maintain two cases and that circumstances had not changed such that a second filing was warranted, the issue of bad faith need not be decided today. The court notes, however, that it has been stated that:

> where a debtor can anticipate the changed circumstances before confirmation of the first plan and later files a second petition to relieve itself of its obligations under the prior plan, however, bad faith may be inferred.

*Matter of Mableton–Booper Assc.,* 127 B.R. at 944.

The liquidation of assets which Debtor is seeking to achieve in its second case is specifically contemplated in the Third Amended Plan of Reorganization. The plan provides that if net cash flow was "inadequate to service debt as provided under the Plan, the Debtor will sell all or any part of the estate ...". Third Amended Plan of Reorganization, Section 2.

While there may be no express statutory prohibition against simultaneous filings, lack of changed circumstances, common sense and equitable considerations militate against such an occurrence in this instance.

## CONCLUSION

The filing of Debtor's second voluntary Chapter 11 petition in 1993 occurred while its prior voluntary Chapter 11 case, filed in 1989, was pending. The first case had not been substantially consummated nor a final decree entered. Debtor cannot maintain two cases at the same time and, accordingly, the second case shall be dismissed.