**In re Gudrun M. PICKERING, a/k/a Goody Pickering, Debtor.**

**Bankruptcy No. 95–11739–13.**

United States Bankruptcy Court,
D. Montana.

April 29, 1996.

Jerrold L. Nye, Billings, MT, for Debtor.

Robert G. Drummond, Chapter 13 Trustee, Great Falls, MT.

Neal G. Jensen, Asst. U.S. Trustee, Great Falls, MT.

James A. Patten, Billings, MT, for Rick E. Raymond.

## ORDER

JOHN L. PETERSON, Chief Judge.

At Butte in said District this 29th day of April, 1996.

In this Chapter 13 bankruptcy, hearing was held March 12, 1996, at Billings on the motions of Rick E. Raymond ("Raymond") to dismiss the case and for court appointed counsel. The motion of Debtor Gudrun Pickering ("Pickering") for sanctions was also heard, as was hearing on confirmation of Pickering's Amended Chapter 13 Plan, dated February 21, 1996, and objections of Raymond and the Chapter 13 Trustee thereto. The Chapter 13 Trustee appeared at the hearing, as did Raymond and Pickering represented by counsel. Dan Pickering gave testimony and Exhibit 1 was admitted into evidence. In addition, Raymond's written arguments rely on facts in the records of Pickering's prior Chapter 7 bankruptcy (Case No. 94–11322), a related adversary proceeding (Adversary Complaint No. 95/00001) and evidence adduced at hearing on December 12, 1995, on Raymond's Motion to Dismiss filed November 7, 1996, which the Court denied.

Upon the conclusion of the March 12, 1996, hearing, the Court took under advisement both Raymond's motion to dismiss and confirmation of Pickering's Chapter 13 Plan. Finally, the Court granted Raymond seven days to file a brief in support of Raymond's objection to confirmation, and Pickering seven days in which to respond. Briefs having been filed, the matter is now ripe for adjudication. Upon consideration of the record, the Court finds for Raymond and the Standing Trustee.

Regarding the motion to dismiss, Raymond protests that Pickering has an earlier Chapter 7 bankruptcy case still pending before the Court in which discharge of Raymond's claim was denied. Raymond argues that, notwithstanding a Ninth Circuit Bankruptcy Appellate Panel decision allowing such a result, this Court should not permit Pickering to maintain a second petition in bankruptcy during the pendency of an earlier case.

Concerning Raymond's objection to confirmation of Pickering's Plan, Raymond alleges Pickering's Chapter 13 Plan lacks good faith for a litany of reasons, including: (1) Pickering has no nonexempt assets needing Chapter 13 protection; (2) Pickering's Plan provides for payment of only 2 percent of Raymond's claim, the chief debt addressed in the Plan;[1] (3) the Court has already declared Raymond's claim nondischargeable in Chapter 7 bankruptcy;[2] (4) Pickering's Plan lasts only 36 months; (5) less than 100 percent of Pickering's disposable income goes to payments under the Plan; (6) Pickering, as one whom the Court has found in defalcation of fiduciary duties pursuant to 11 U.S.C. § 523(a)(4), is not an "honest but unfortunate" debtor for which bankruptcy protection was designed; (7) under the facts at bar, Pickering and Pickering's spouse will build equity in livestock assets over the duration of the Plan; and (8) after discharge of Raymond's claim in Chapter 13, Pickering will be able to claim a substantial inheritance from Pickering's mother immediately upon the discharge, free and clear of all current debts.

As to the Trustee's objections to Pickering's Plan, the Trustee alleges the Plan fails to disclose all household income and expenses per F.R.B.P. 1007, and the Trustee cannot determine whether 100% of disposable income is being provided for in the Plan. The Trustee further argues the Plan lacks a good faith basis for three reasons. First, Pickering has failed to correctly schedule household income and expenses. Therefore, the Trustee cannot properly determine the presence or amount of surplus in Pickering's income after payment under the Plan. Second, the inaccuracies in Pickering's filings, in the face of direct admonitions against submitting false statements, suggest Pickering's intent to deceive the Court. Third, the nature of the debts and income *sub judice*, in which the main and only substantial unse-

---

1. The other two claims provided for in the Plan are a debt arising from attorney fees in connection with Raymond's claim, and a small judgment debt.

2. See Adversary Complaint No. 95/00001.

cured creditor under the Plan has a claim already declared nondischargeable in a prior Chapter 7 case, shows a lack of good faith in the filing of the Chapter 13 case.

### I.

The parties do not dispute the material facts at hand. Pickering filed a Chapter 7 Bankruptcy petition September 13, 1994 (Case No. 94–11322–7). A discharge was entered on July 25, 1995. The Court, however, excepted Pickering's debt to Raymond from the discharge in an adversary proceeding (Adversary Complaint No. 95–00001) pursuant to 11 U.S.C. § 523(a)(4). This Chapter 7 case remains pending.

In disposing of the adversary proceeding, the Court adopted findings of fact made by the Hon. Kenneth R. Wilson, District Judge for the Montana Sixteenth Judicial District, Custer County, Montana, in Cause 20,022 entitled "Rick E. Raymond, Plaintiff, v. Dan Pickering and Gudrun Pickering, Defendants." To summarize these findings, Pickering, as co-conservator of Raymond's assets during a period in which Raymond suffered mental incapacitation, engaged in activities found to be "a breach of [Pickering's] fiduciary duties" and in "violation of] the statutes with respect to conservators and guardians." *Raymond v. Pickering*, Adversary No. 95/00001 (Bankr.Mont. filed September 13, 1994), Order entered March 15, 1995, ¶ 22. In determining the debt created by these acts nondischargeable under 11 U.S.C. 523(a)(4), this Court concluded:

> For clearly [Pickering] using [Raymond's] funds in [Pickering's] cattle operation, sought to improve [Pickering's] largess not the Conservatorship, and then had no records to even support such expenditures. I conclude [Raymond] has shown by a preponderance of the evidence that [Pickering] dealt with the Guardianship funds "as if they were her own", thus causing a defalcation by a fiduciary within the meaning and interpretation of § 523(a)(4).

*Id.* at 19. The U.S. District Court for the District of Montana affirmed this decision in *Raymond v. Pickering*, CV 95–089–BLG–JFB (D.Mont. notice of appeal filed May 22, 1995), by Judgment entered August 22, 1995.

Subsequently, on October 6, 1995, Pickering filed the instant Chapter 13 petition. Pickering's Amended Plan provides for payments of $56.00 a month for 36 months, with a total payment to unsecured creditors amounting to $1,800.00. Raymond is the chief unsecured creditor, with a claim of some $87,000 out of $101,412.99 in unsecured claims. Thus, the Court can only characterize the Plan's proposed payment on Raymond's claim as, at best, "nominal." The provisions call for payment of a secured creditor, First State Bank of Forsyth, outside the Plan.

In addition, the record shows Pickering's spouse, Dan, owns a small cattle heard. The cow-calf operation runs off advances made by First State Bank of Forsyth deposited in Dan's checking account as expenses accrue. Any proceeds from sales of cattle go directly to the bank for application to Dan's balance due on a $60,000 loan secured by the cattle, which total increases with each operating advance. While the parties dispute whether such exchanges give rise to "income" or "expenses," neither Pickering's Schedule I, nor Pickering's Statement of Financial Affairs reflects any of these transactions.

### II.

#### A.

 Regarding the Chapter 13 Trustee's objection, under F.R.B.P. 1007, Debtors must disclose all household income and expenses in their Schedules and Statements of Affairs. This facilitates evaluation of a plan under the "disposable income test," which provides that before a court may confirm a Chapter 13 plan, the plan must provide for payment of 100% of the debtor's disposable income. 11 U.S.C. § 1325(b)(1)(B). If in a particular case, upon objection of the trustee or a holder of an allowed unsecured claim, it appears from review of the record that a debtor has not provided all such information, a court lacks the basis for making a disposable income determination, and it may not confirm the plan. *Id.* Furthermore, a court must construe any ambiguities with regard to the information—or lack thereof—in a debtor's schedules or statements of affairs

against the debtor as both the drafter of the documents and as the party most familiar with the information required by them. *See, e.g., In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992), *aff'd* 153 B.R. 601 (9th Cir. BAP 1993), *aff'd* 24 F.3d 247 (9th Cir. 1994).

**B.**

Regarding Raymond's Motion to Dismiss, when a debtor files a case under Chapter 13 of the Bankruptcy Code after discharge has been granted in a prior Chapter 7 petition, but before the Chapter 7 has been closed, dismissal of the Chapter 13 petition depends in the first instance upon whether the debtor filed the Chapter 13 plan in good faith. *In re Grimes,* 117 B.R. 531, 535 (9th Cir. BAP 1990). If a court finds the Chapter 13 petition filed in good faith, "there [is] no statutory bar to the filing of a Chapter 13 petition after receiving a Chapter 7 discharge and while the Chapter 7 petition [is] still pending." *Id.* (citing *Matter of Metz,* 820 F.2d 1495 (9th Cir.1987)).

 Under 11 U.S.C. § 1325(a)(3) bankruptcy courts also have "an independent duty to make a considered assessment of the debtor's good faith." *Fidelity & Casualty Company of New York v. Warren (In re Warren),* 89 B.R. 87, 90 (9th Cir. BAP 1988).

> If confirmation depended entirely upon arithmetical computations or the absence of illegal activity in the case, there would be no need for a judge. Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case. Each case must be judged on its own facts.

*Id.* In appraising the issue of a debtor's good faith, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") has also held:

> In general the court must focus on the equity and good conscience of the debtor. The court must be guided by equitable doctrines and must consider such things as the public interest. [citing *American United Mutual Ins. Co. v. City of Avon*

*Park,* 311 U.S. 138, 140, 61 S.Ct. 157, 159, 85 L.Ed. 91 (1940).] Specifically, with respect to Chapter 13 the court must inquire into whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. While substantial repayment is a factor, the court must consider all other factors that relate to the equities, and the decision must be made on a case by case basis.

*Street v. Lawson (In re Street),* 55 B.R. 763, 764 (9th Cir. BAP 1985) (citing *Goeb v. Heid (In re Goeb),* 675 F.2d 1386, 1389–90 (9th Cir.1982)). "Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of *all* militating factors." *Goeb,* 675 F.2d at 1390 (emphasis in original).

The *Goeb* court further elaborated:

> We emphasize that the scope of the good faith inquiry should be quite broad. The statement most often quoted on the meaning of "good faith" is:
>
> > Good faith itself is not defined but generally the inquiry is directed to whether or not there has been an abuse of the provisions, purpose or spirit of Chapter XIII in the proposal or plan.
>
> 10 W. Collier, *Bankruptcy* par. 29.09[0] (14th ed. 1980). However even this generalization does not adequately reflect the range of relevant considerations. For example, an important issue is whether the debtor misrepresented material facts in his plan. (Citation omitted). Too much weight should not be given to Collier's observations.

*Id.* at 1390, n. 9.

On the specific issue of nominal repayment, the *Goeb* court held such would not by itself support a finding of bad faith, however, "nominal-repayment is one piece of evidence that the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith." *Id.* at 1391.

 Moreover, the "best efforts" test, meaning debtor's funding of a plan to the greatest possible extent of the debtor's "dis-

posable income" as defined in 11 U.S.C. § 1325(b)(2),[3] does not end the good faith inquiry. *Warren,* 89 B.R. at 88 and 95. Even assuming debtors commit their best efforts to funding feasible plans, debtors also have the burden of showing further that they have filed and proposed their plans in good faith. *Id.* at 91. In interpreting the holding of *Goeb,* 675 F.2d at 1390, the BAP has adopted a number of nonexclusive illustrative criteria for evaluating good faith in the Chapter 13 context (collectively referred to as "the Warren factors"):

1) The amount of the proposed payments and the amounts of the debtor's surplus;

2) The debtor's employment history, ability to earn, and likelihood of future increases in income;

3) The probable or expected duration of the plan;

4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt, and whether any inaccuracies are an attempt to mislead the court;

5) The extent of preferential treatment between classes of creditors;

6) The extent to which secured claims are modified;

7) The type of debt sought to be discharged, and whether any such debt is nondischargeable in Chapter 7;

8) The existence of special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy [Code]

10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) The burden which the plan's administration would place upon the trustee.

(Citations omitted.)

*Warren,* 89 B.R. at 93. Finally, and most important for the case at bar, a debtor's burden is " 'especially heavy' when a debtor seeks a 'super discharge' " of debts not dischargeable under Chapter 7. *Id.* at 93.

To supplement Ninth Circuit authority, the Fourth Circuit Court of Appeals has held, "Resort to the more liberal discharge provisions of Chapter 13 ... may well signal an 'abuse of the provisions, purpose, or spirit' of the [Code], especially where a major portion of the claims sought to be discharged arises out of prepetition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan." *Neufeld v. Freeman,* 794 F.2d 149, 152–53 (4th Cir.1986). In *Neufeld,* a debtor sought discharge in Chapter 13 of a judgment debt arising from the tortious conversion of assets, conduct the court found likely "nondischargeable in Chapter 7." *Id.* at 153. The claim constituted "at least 30%" of the debtor's unsecured debt. In confirming the debtor's plan, the bankruptcy court declined to consider the debtor's prepetition conduct or the percentage of repayment on unsecured debts arising from that conduct in deciding the debtor's plan had been proposed in good faith. The Court of Appeals, however, vacated the order of confirmation, instructing the court below on remand to "weigh ... in the balance" the debtor's "prepetition conduct and recent discharge under Chapter 13 in making the § 1325(a)(3) good faith inquiry." *Id.*

 "We should 'give most respectful consideration to the decisions of the other Courts of Appeals and follow them whenever we can.' " *In re Camilli,* 182 B.R. 247, 251 (9th Cir. BAP 1995) (citing *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987)). "Absent a decision by our Court of Appeals or a conflict between circuits, the [Court] should regard the authority of another circuit as highly persuasive." *Id.* (citing *See Onyebuchim Onyeanusi v. Pan American World Airways,* 767 F.Supp. 654, 655 n.

---

3. 11 U.S.C. § 1325(b)(2) provides:
 For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—
 (A) for the maintenance or support of the debtor or a dependent of the debtor; and
 (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

1 (E.D.Pa.1990), *aff'd,* 952 F.2d 788 (3rd Cir. 1992)).

> Furthermore, with all of our sister circuits who have considered the issue arriving at the same conclusion, our going a different direction would only create an unnecessary intercircuit conflict. It is for this reason that we have adopted a cautionary rule, counseling against creating intercircuit conflicts. See *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1374 (9th Cir. 1987) (*Chavez–Vernaza* ), cert. denied, —— U.S. ——, 114 S.Ct. 1324, 127 L.Ed.2d 672 (1994).

*Taffi v. United States (In re Taffi),* 68 F.3d 306, 308 (9th Cir.1995).

▅ Upon the instruction of the foregoing Circuit Court and BAP case law, this Court must carefully consider conduct by the debtor prepetition that "may well signal an 'abuse of the provisions, purpose, or spirit' " of the Bankruptcy Code to "ensure against manipulation of the statute by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid, *at minimal cost,* a nondischargeable debt" *Neufeld,* 794 F.2d at 153 (citing *In re Chase,* 43 B.R. 739, 743–744 (Bankr.D.Md.1984) and *In re Meltzer,* 11 B.R. 624, 627 (Bankr.E.D.N.Y.1981)) (emphasis added).

### C.

▅ Returning to the issue of dismissal, the BAP has intimated that a *per se* rule mandating dismissal of a Chapter 13 case on the grounds the debtor has pending a Chapter 7 case in which a discharge has been issued would conflict with Congressional policy as reflected in the Chapter 13 provisions of the Bankruptcy Code. *Grimes,* 117 B.R. at 535 (quoting *In re Saylors,* 869 F.2d 1434 (11th Cir.1989)). In *Grimes,* the BAP held that no statutory bar existed to filing a Chapter 13 case while a Chapter 7 case was pending but after discharge had been entered because at that point the "single estate rule" no longer applied. *Id.* This Court and others, however, has sharply criticized the "single estate" distinction made in *Grimes* as artificial. For instance, in *In re Shockley,* 15

Mont.B.R. 114, 115 (Bankr.Mont.1996), the Court explained the case law thus:

> The recent filing of the Chapter 7 case brings into play the rule set forth in *In re Borg,* 105 B.R. 56, 58, 7 Mont.B.R. 189, 193 (1989), in which this Court held:
>
>> The Debtor filed this Chapter 12 case while appeal was pending on his last Chapter case with the Bankruptcy Appellate Panel of the Ninth Circuit. The Debtor's last Chapter 12 case has not been closed, and remains open in this Court. Since the United States Supreme Court decision in *Freshman v. Atkins,* 269 U.S. 121, 123–124, 46 S.Ct. 41, 41–42, 70 L.Ed. 193 (1925), courts have universally held that a Debtor cannot file a second bankruptcy petition while a previous petition is pending (citations omitted). The [*Associates Financial Services Corp. v.* ] *Cowen* court [29 B.R. 888, 894 (Bankr.S.D.Ohio 1983) ] addressed the reasoning behind this posture:
>>
>>> The filing of two simultaneous petitions is contrary to the obvious contemplated function of the Bankruptcy Code to resolve debtors' financial affairs by administration of a debtor's property as a single estate under a single Chapter within the Code (citations omitted).
>>
>> Accordingly, this Court finds that the Debtor's March 6, 1989, filing of a Chapter 12 Petition, with a Chapter 12 case pending, is an abusive, frivolous, and invalid filing.
>
> Other recent cases support the *Borg* holding. *See, In re Keen,* 121 B.R. 513 (Bankr. W.D.Ky.1990) and *In re Delaware Valley Broadcasters, Ltd. Part.,* 166 B.R. 36 (Bankr.D.Del.1994).

*Shockley,* 15 Mont.B.R. at 115. Earlier, the Court had harmonized the holding of *Borg* with that of *Grimes* in *In re Henke,* 127 B.R. 255, 256, 9 Mont.B.R. 360, 361, n. 1 (Bankr. D.Mont. (1991)), holding:

> This court's decision in *In re Borg,* 105 B.R. 56 (Bankr.Mont.1989) is consistent with *Grimes* in that the facts in *Borg* show a discharge had not been entered in the pending cases when the Debtor filed a new

Chapter 12 case. *Grimes* holds that a debtor who has been granted a discharge under one chapter of Title 11 may file a subsequent petition under another chapter even though this first case remains open.

The case at bar, however, requires the Court to address directly the *Grimes* analysis, and either follow it or reject it.

The *Grimes* decision makes an artificial distinction between cases in which discharge has not been entered and those in which a discharge has been entered but have not yet been closed.

> If one extends the logic of *Grimes*, the debtor could simply file another petition covering the same property! Granted he may not receive a discharge under 11 U.S.C. § 727, but he might well obtain an order authorizing exemption [in the second case] that he did not obtain [in the first case]. For that matter, some debtors might elect to file on a monthly or bi-monthly basis and enjoy a perpetual state of bankruptcy euphoria, forever thwarting the creditors of the estate. Thus, we categorically reject and repudiate the *Grimes* view which we perceive as an open invitation to open Pandora's box to an eternal debtor's heaven. Carried to its (il)logical extreme, *Grimes* can serve as authority for endless filings.

*In re Keen*, 121 B.R. 513, 515 (Bankr. W.D.Ky.1990); followed in *In re Delaware Valley Broadcasters, Ltd. Part.*, 166 B.R. 36 (Bankr.D.Del.1994). Although perhaps overwrought, the *Keen* analysis resonates true because it underscores a convincing point. The efficient administration of bankruptcy estates under the Bankruptcy Code requires that only a debtor have only one case open at a time. This Court therefore declines to follow the BAP's *Grimes* decision into what it views as an incorrect statement of law and instead adopts the majority rule based upon *Freshman*, 269 U.S. at 123–124, under which "a debtor cannot filed a second bankruptcy petition while a previous petition is pending." *Borg*, 105 B.R. at 58.

### D.

Furthermore, assuming *arguendo* that *Grimes* does correctly state the law of the Ninth Circuit, which this Court denies, no allegations of bad faith remained in that case on appeal. As a result, the court expressly declined to address the question of what effect a lack of good faith might have on the motion to dismiss. *Grimes*, 117 B.R. at 535. Another decision from the Ninth Circuit Court of Appeals, however, has ruled squarely on this issue. The court in *Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir.1994), made this succinct holding: "A Chapter 13 petition filed in bad faith may be dismissed 'for cause' pursuant to 11 U.S.C. § 1307(c)." In *Eisen*, a the bankruptcy court found bad faith under the "totality of circumstances" test based upon multiple filings by the debtor coupled with timing a filing in Chapter 13 to frustrate a state court action on the eve of trial, and upon misleading statements made in the debtor's various schedules and statements of affairs. In affirming the lower courts, the Court of Appeals held without reservation that where bad faith warrants denial of confirmation of a Chapter 13 plan, so too does such bad faith warrant dismissal of the entire petition. *Id.* Section 1307 allows conversion or dismissal "whichever is in the best interest of creditors and the estate, for cause, including— . . . (5) denial of confirmation of a plan under section 1325 of this title."

Other courts have also found lack of good faith sufficient to constitute cause for dismissal. For instance, in *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier)*, 986 F.2d 1326 (10th Cir.1993), the court upheld a bankruptcy court's dismissal of a Chapter 13 petition under 11 U.S.C. § 1307(c). *Gier*, 986 F.2d at 1329 (citing the Seventh Circuit's holding in *In re Love*, 957 F.2d 1350 (7th Cir.1992)). The court held that the fact finder must consider the totality of the circumstances in determining bad faith. Further, if bad faith be found, "although we agree that the rejection of a Chapter 13 plan [for lack of good faith] should not necessarily lead to dismissal, it is a factor for the bankruptcy court to consider as it determines whether to dismiss the petition pursuant to § 1307(c)" for cause. *Id.* Other factors present in that case included testimony of the debtor inconsistent with the proposed plan, and an indication that the

debtor had an actual ability to pay creditors. *Id.* at 1330. These considerations, combined with a finding of bad faith, supported the bankruptcy court's dismissal of the case when reviewed for clear error. Furthermore, in *In the Matter of Love*, 957 F.2d 1350 (7th Cir.1992), the Seventh Circuit Court of Appeals held that when a bankruptcy court reviewed the question of good faith under a "totality of the circumstances" test, a finding of bad faith would support a § 1307(c) dismissal for cause (citing *In re Smith*, 848 F.2d 813, 816, n. 3 (7th Cir.1988)).

## III.

 Applying the foregoing principles to the facts at bar, the Court finds denial confirmation of Pickering's plan and dismissal the instant petition required. A series of considerations supports this finding.

First, the record contains insufficient evidence to determine whether Pickering has committed 100% of disposable income to the Plan. Pickering has failed to include financial information about Pickering's spouse's cattle operation in Pickering's Schedules and Statements of Affairs, and neither the Chapter 13 Trustee, nor the Court itself is in any position to determine whether Pickering has complied with 11 U.S.C. § 1325(b)(1)(B). While the parties dispute whether the transactions Pickering's spouse engages in with the bank should appear in Pickering's Schedules and Statements of Affairs, construing the Schedules against the Debtor convinces the Court of their incompleteness. Second, on the issue of multiple bankruptcy cases pending simultaneously, Pickering does not dispute, and the record clearly shows, that Pickering had a Chapter 7 pending at the time of filing the instant Chapter 13 petition, which remains open today. Thus, under the holding of *Borg*, 105 B.R. at 58, the Chapter 13 case under consideration at bar must be dismissed. Third, the Court finds the instant Plan lacking good faith to an extent sufficient to justify not only denial of confirmation, but also to warrant dismissal of Pickering's Chapter 13 petition.

In making this final determination, the Court notes Pickering's Plan implicates several *Warren* factors signifying a lack of good faith. For instance, the Court has already declared the major debt sought discharged in this Chapter 13 nondischargeable under Chapter 7. Indeed, as the Plan deals with few other claims, had the Court not declared this debt nondischargeable in the earlier adversary proceeding, Picketing would never have filed the instant petition. Furthermore, the *Warren* court held that when a debtors seek the "super discharge" of Chapter 13, "the court need not, and should not, neutralize [the incentive to file Chapter 13] by confirming Chapter 13 plans that are in essence veiled Chapter 7 cases." *Warren*, 89 B.R. at 95. The instant Plan deals with only three unsecured debts—which arise in chief from a previously declared nondischargeable defalcation claim—paying them a nominal sum, and attempting to treat all secured claims "outside the plan." Thus the case *sub judice* is not a debt adjustment at all, but rather a discharge of unsecured claims "in essence a Chapter 7 case," and under *Warren* the Court should not confirm Pickering's Plan.

In addition, although Pickering intends to pay mere pennies on Raymond's total claim, the Plan only endures for 36 months rather than the maximum of 60 months allowed by 11 U.S.C. § 1322(d), another *Warren* indicia of bad faith. This also indicates that Pickering lacks requisite sincerity in seeking Chapter 13 relief, and is motivated not by a desire to pay as much as possible on the claim, but by a desire to avoid an obligation arising from Pickering's own dishonesty and lack of fair dealing. Moreover, in harmony with the *Warren* holding that frequent filings may indicate lack of good faith, the fact of Pickering's currently pending Chapter 7, in which Pickering unsuccessfully sought to have bulk of instant debts discharged, operates against a finding of good faith.

Finally, Pickering has attempted to exclude Pickering's secured creditors from the Plan, proposing to pay them in full "outside" its provisions, leaving the unsecured creditors, chief among them Raymond, as the only recipients of the nominal payments for which the Plan provides. Thus, while the Plan itself may not reflect "preferential treatment between classes of creditors," Pickering's proposal attempts to improperly give the se-

cured class of Pickering's creditors preferential treatment. Under *Warren,* this is a factor substantiating an allegation of bad faith.

Furthermore, the Court has previously ruled that payments "outside the plan" really cannot exist:

One leading text writer, Lundin, *Chapter 13 Bankruptcy,* § 4.51, states:

There is no such thing as paying claims "inside" and "outside" of the plan. All payments to creditors, whether from the Chapter 13 trustee or directly from the debtor, are payments "through" or "pursuant" or "under" or "inside" the Chapter 13 plan. Use of the words "inside" and "outside" is not just misleading; it can be dangerous.

The same is true of Chapter 12 because the statutory language on treatment of claims is virtually identical between the two chapters. *In re Citrowske,* 72 B.R. 613, 615–16 (Bankr.Minn.1987), a Chapter 12 case, is likewise critical of the term "outside the plan", explaining that since a debtor's plan must specify how each creditor's claim will be treated and paid, all payments must be made according to the plan, so there is really no such thing as payments being made outside the plan. Moreover, it is now established in this Circuit that all payments to creditors under a Chapter 12 confirmed Plan, whether provided to be paid directly by the debtor or by the trustee, are subject to a trustee's commission of 7%. *In re Fulkrod,* 973 F.2d 801 (9th Cir.1993).

Consequently, we now hold that Chapter 12 of the Bankruptcy Code does not authorize a debtor to make payments directly to creditors with claims modified by a plan of reorganization in order to avoid paying the bankruptcy trustee the statutory fee under 28 U.S.C. § 586. Although the BAP hinted that Chapter 12 might permit a debtor to make direct payments to impaired creditors without trustee compensation in certain limited circumstances, *see In re Fulkrod,* 126 B.R. at 588, that statement is neither necessary to its decision nor supported by statute. *Id.* at 803.

*In re Gall,* 12 Mont.B.R. 133, 133–134 (Bankr.Mont.1993). The Court finds this effort to circumvent the statute another indicia of possible bad faith.

Further, an analysis of the record reveals flagrant errors, which also signify why Pickering's filing should be construed as lacking good faith. According to Pickering's Schedule D, First State Bank of Forsyth ("the Bank") holds a $1,000.00 secured claim on Pickering's mobile home. The Proof of Claim filed by the Bank however, reveals the claim to be worth $5,421.51, and Pickering has not objected to it. Thus Pickering's Schedule A and D conflict with the Bank's Proof of Claim. Moreover, Pickering claims in Schedule J a monthly payment on the mobile home mortgage at $360 per month. At this rate, Pickering could pay-off the Bank's claim in three months if the Schedules reflect the true obligation, or in about 18 months if the Proof of Claim is correct. Either way, Pickering will have literally thousands of dollars more in disposable income to commit to the Plan than currently proposed. It is impossible to believe Pickering's Plan could have been so wrong by sheer mistake.

Deeming the unassailed $5,421.51 Proof of Claim filed by the Bank correct, the Court can now calculate the figures a correctly reckoned Chapter 13 Plan would contain, including payment of the secured claim "within the Plan." Under 11 U.S.C. 1325(a)(5), secured claims must be paid in full, at the market rate of interest, within the duration of the Plan. *Barnes v. Barnes (In re Barnes),* 32 F.3d 405, 407 (9th Cir.1994). At 9%, this would require only $172.52 per month under a 36–month Plan; or only $112.63 per month under a 60–month Plan. Moreover, placing the claim within the express terms of the plan would free $360 a month dedicated in Schedule J to "Rent or home mortgage payments" for use as plan payments. Adding this to the currently reported surplus would yield $422.59 available for plan payments. This would amount to $15,213.24 over a 36 month Plan, leaving $7481.20 to pay administrative expenses and unsecured claims; or $25,355.40 over a 60 month Plan, leaving $16,062.06 after payment of the Trustee's fee and the secured claim. This compares with some $1,800 under the

instant Plan. Again, such a discrepancy by Pickering could not have arose by mistake, and strongly shows a lack of good faith. On the other hand, use of the foregoing 60–month Plan by Pickering may have demonstrated sufficient good faith to warrant discharge in Chapter 13 of a debt not dischargeable in Chapter 7.

Thus, of the 11 *Warren* factors suggesting a finding of lack of good faith in the proposal of a Chapter 13 plan, the Court finds at least five present in the case at bar. Furthermore, the instant plan proposes repayment of the unsecured claims of only about two cents on the dollar. Although nominal repayment alone does not preclude confirmation, nevertheless, such "is one piece of evidence that the debtor is unfairly manipulating Chapter 13 and therefore acting in bad faith." *Goeb,* 675 F.2d at 1391. Given the numerous glaring discrepancies contained in the instant petition, the Court finds Pickering to have failed to show a good faith basis for the instant Plan. In other words, the Court must consider the instant Chapter 13 petition a "veiled Chapter 7" filed for the sole purpose of having a debt arising from fraudulent conduct discharged. This is simply not an instance of an "honest but unfortunate debtor" seeking to salvage a floundering financial situation from total collapse by resorting to Chapter 13 debt adjustment. Rather, we have here a debtor already found to be dishonest taking advantage of Chapter 13 to discharge "at minimal cost" claims not otherwise dischargeable. *Neufeld,* 794 F.2d at 153. Considering "*all* militating factors" involved in the instant case, *Goeb,* 675 F.2d at 1390 (emphasis in original), the Court concludes Pickering has failed to carry the "especially heavy" burden of showing good faith where the debtor seeks a "super discharge." *Warren,* 89 B.R. at 93. Applying the holding of *Eisen,* 14 F.3d at 470, to this finding, the Court further exercises its discretion by dismissing this case pursuant to 11 U.S.C. § 1307 for cause.

### CONCLUSION

First, Pickering filings fail to provide the information required by F.R.B.P. 1007 sufficient for the Court to determine if the Plan meets the disposable income test of 11 U.S.C. § 1325. Second, Pickering may not have two bankruptcy cases pending simultaneously. Third, these circumstances, combined with the evidence of bad faith described in the foregoing, lead the Court to conclude that Pickering's current filing amounts to an "unfair manipulation the Bankruptcy Code," proposed for an inequitable purpose, warranting immediate dismissal. *Street,* 55 B.R. at 764. Consequently, not only must confirmation of Pickering's Plan denied, but the interest of the estate and the creditors can be best served only by immediate dismissal of this case pursuant to 11 U.S.C. § 1307.

IT IS ORDERED confirmation of Debtor Gudrun Pickering's Amended Chapter 13 Plan is denied; and the case is ordered dismissed.